## LIGGETT & MYER TOBACCO CO. *v.* HYNES.

*(District Court, W. D. Arkansas.* May Term, 1884.)

1. TRADE-MARK—INFRINGEMENT.

In a case where it is claimed that a trade-mark has been infringed, to consti-tute an infringement it is not necessary that the device complained of should be a *fac simile* of the device of complainants. There may be an infringement without exact similarity.

2. SAME—RESEMBLANCE.

Two trade-marks are substantially the same in legal contemplation, if the resemblance is such as to deceive an ordinary purchaser, giving such attention to the same as such a purchaser usually gives, and to cause him to purchase the one supposing it to be the other.

3. SAME—LIABILITY TO DECEIVE.

The resemblance need not be such as would deceive persons seeing the two trade-marks placed side by side, or as would deceive experts.

4. SAME—INTENTION TO DECEIVE.

There may be an infringement without a specific intent to deceive the pub-lic. If the effect of the device, when considered alone or in connection with the shape, size, character, and appearance of the article upon which it is placed, is to deceive, the party adopting it must be held to have intended deception ; as every man is held to have intended the necessary, natural, and probable consequences of his own acts.

This is a bill in equity, brought here on account of citizenship of the respective parties, to perpetually restrain the defendant from using the mark attached to complainant's exhibit, "Robert S. Hynes' Plug Tobacco," on plug tobacco, complainants claiming to have an established right to the use of the mark of a "star" affixed to plugs of tobacco as a trade-mark, and complainant's mark is shown on complainant's exhibit, "Liggett & Myer's Plug Tobacco." Specimens or samples of both the complainant's and defendant's goods are pro-duced in court and offered in evidence; also wood engraving of the same in the brief of the complainant.

*Paul Bakewell,* for complainant.

*Clendenning & Sandels,* for defendant.

PARKER, J. The law is well settled that a party who has appro-priated a particular trade-mark to distinguish his goods from other similar goods has a right or property in it which entitles him to its exclusive use, and that this right is of such a nature that equity will

protect it by injunction from innovation. *Hostetter* v. *Van Winkle*, 1 Dill. 329. The leading principle upon which the law of trade-mark is based, is that the honest, skillful, and industrious manufacturer, or enterprising merchant, who has produced or brought into the market an article of use or consumption that has found favor with the people, and who, by affixing to it some name, mark, device, or symbol which serves to distinguish it as his, and to distinguish it from all others, has furnished his individual guaranty and assurance of the quality and integrity of the manufacture, shall receive the first reward of his honesty, skill, industry, or enterprise, and shall in no manner and to no extent be deprived of the same by another, who to that end appropriates and applies to his production the same, or a colorable imitation of the same name, mark, device, or symbol, so that the public are or may be deceived or misled into the purchase of the productions of the one, supposing them to be those of the other. 6 Wait, Act. & Def. 23, and authorities there cited.

The question to be considered in this case is whether the conduct of the defendant amounts to an infringement of the plaintiff's trade-mark, or an injury to his legal or equitable rights. As was well remarked by the Kentucky court of appeals in the case of *Avery* v. *Mickle:* "The object of the trade-mark law is to prevent one person from selling his goods as those of another, to the injury of the latter and of the public." It grew out of the philosophy of the general rule that every man should so use his own property and rights as not to injure the property or rights of another, unless some priority of right or emergency exists to justify a necessarily different manner of use.

It is true, in this case, that the trade-mark upon the tobacco of defendant is not a *fac simile* of that upon the tobacco of plaintiff. If it was, it would, of course, be an infringement. They are not exactly similar. But to constitute an infringement exact similarity is not required; there may be an infringement without it. The supreme court of the United States in *Gorham Co.* v. *White*, 14 Wall. 511, declares: "Two trade-marks are substantially the same in legal contemplation if the resemblance is such as to deceive an ordinary purchaser,"—giving such attention to the same as such a purchaser usually gives, and to cause him to purchase the one supposing it to be the other. The same court, in *McLean* v. *Fleming*, 96 U. S. 255, says: "Where the similarity is sufficient to convey a false impression to the public mind, and is of a character to mislead and deceive the ordinary purchaser in the exercise of ordinary care and caution in such matters, it is sufficient to give the injured party a right to redress." Nor need the resemblance be such as would deceive persons seeing the two trade-marks placed side by side, (*Manuf'g Co.* v. *Trainer*, 101 U. S. 64,) or such as would deceive experts, persons, because of their peculiar knowledge from their being wholesale or retail dealers, or in any other way specially conversant with the trade-mark simulated.

But the trades-man brings his privilege of using a particular trade-mark under the protection of equity if he proves, or it is apparent or manifest to the court by inspection, that the representation employed bears such a resemblance to his as to be calculated to mislead the public generally, who are purchasers of the article, to make it pass with them for the one sold by him. If the *indicia* or signs used tend to that result, the party aggrieved will be entitled to an injunction.

This principle is sustained by the cases above referred to; by *Walton* v. *Crowley*, 3 Blatchf. 440; 2 Story, Eq. Jur. 951; 2 Kent, Comm, 453; and a long and unbroken line of authorities, American and English.

The difference in the trade-marks of the plaintiff and defendant, in this case, would, perhaps, be at once detected by the intelligent user of tobacco, looking for his favorite brand, just as the man of luxurious tastes would discern his favorite brand of champagne. But the plaintiff is entitled to protection if the trade-mark of defendant would deceive the ordinary purchaser, purchasing as such persons ordinarily do. In this connection we must not lose sight of the character of the article, the use to which it is put, the kind of people who ask for it, and the manner in which they usually order it.

There is no proof in this case, coming from living witnesses, that the defendant adopted the trade-mark complained of with the specific intent of selling his tobacco as the tobacco of plaintiff, or that he expected to deceive the public. But if it is apparent to the court from an inspection of the two articles, or the court is able to see by such inspection, that plaintiff's trade-mark is so simulated as probably to deceive customers or patrons of his trade or business, there is good ground for the court to enjoin. *Filley* v. *Fassett*, 44 Mo. 173. If the effect of the simulated trade-mark is to deceive the public into the belief that the article upon which it is placed is the article of some other manufacturer, then it is a deception, whether it was the actual intention of the person using the simulated trade-mark to deceive or not, as the principle of law applies that persons are held to have intended the necessary, natural, and probable consequences of their acts.

In looking at the trade-mark to see whether it is so far an imitation of another as to deceive ordinary customers exercising ordinary care when purchasing, we must not look at the device alone, but we must also examine the article upon which it is placed, and if there is a resemblance in it to another article bearing the trade-mark that is claimed to have been infringed, and if this resemblance, when blended with the appearance of the device, has a tendency to deceive the ordinary public into the belief that they are buying the other article, then the very nature of the article becomes potential evidence in the case to show a purpose to deceive.

In this case, if the device of defendant was upon a plug of tobacco different in shape from that of complainant, the chance of deception

would be so slight that no court could find from the appearance of the two designs that the ordinary public would be deceived. Now, while there is no trade-mark in the shape of the plugs of tobacco of complainant, and consequently the defendant could make his plugs in any shape he pleased, without being guilty of an infringement, yet when he makes his plugs in such a way as to give them the general appearance of complainant's, and puts on them a device of such a character, and of such shape and appearance, as that the customer generally, when he sees the shape and appearance of the plug, and the device on it, will be deceived into the belief that it is complainant's tobacco that he is buying, there is a state of case presented by blending the size, nature, structure, and appearance of the plug with the device which would not exist if we viewed either the plug of tobacco or the device separately.

Taking this as the true rule, and applying it in this case, I am forced to the conclusion that the ordinary mass of purchasers would be deceived, after paying ordinary attention when purchasing, into the belief that they were buying the tobacco of complainant, when in fact they were getting the tobacco of the defendant. Ordinary care, in this connection, means the care that men ordinarily exercise when buying chewing tobacco.

Entertaining this view of the case, I think complainant is entitled to an injunction enjoining defendant from using the device adopted by him; and it will be so ordered.