CARSON *v.* URY *et al.*

*(Circuit Court, E. D. Missouri, E. D.* September 2, 1889.)

INJUNCTION—FRAUDULENT MISREPRESENTATIONS.

The Cigar-Makers' International Union of America, an unincorporated association for mutual benefit, adopted a label purporting to be issued by the union, and to be placed on boxes of cigars made by members of the union. Complainant, who was a manufacturer of cigars, and a member of the union, filed a bill to restrain defendants, who were not members thereof, from making and selling counterfeits of the union labels, with the alleged attempt to defraud complainant and the public. The bill alleged that by the use of the labels complainant was enabled to receive a higher price for his cigars, and that the sale of such counterfeit labels injured his trade. *Held,* that though there is no trade-mark in such labels, as complainant shows special damage and that the right to use them is valuable, and as the adoption and use of

such labels are in no way unlawful, and the action of defendants is confessedly fraudulent, in that they sold the spurious labels, though they may not have used them on cigars of their own manufacture, the bill alleges good grounds for equitable relief. -

In Equity.   On demurrer to bill.

The case made by the bill, and admitted by the demurrer, may be summarized as follows: The "Cigar-Makers' International Union of America" is a voluntary, unincorporated association of practical cigar-makers, having many members, and was formed to promote the mental, moral, and physical welfare of its members, to assist them in obtaining remunerative wages, to extend pecuniary aid to members and their families in case of sickness or death, and generally to maintain a high standard of workmanship.   In September, 1880, at a convention held by members of the union, a label was adopted to be placed on cigar boxes, for the purpose of designating cigars made by members of the union. The label is nothing more than a certificate printed on blue paper, and purporting to have been issued by authority of the union, to the effect that the cigars contained in the box to which it is affixed have been made by first-class workmen, members of the union, and not by "inferior rat-shop, cooly, prison, or tenement-house workmanship." All members of the "Cigar-Makers' International Union of America," (and the membership is said to exceed 25,000) are allowed to affix the label to cigars made and sold by themselves, provided they do not employ others to make cigars.   It is also the practice of the union to furnish the label gratuitously to all cigar manufacturers throughout the United States, who employ exclusively members of the union at an agreed schedule of wages.   Complainant in this case is a member of the union, and for two years past has been making and selling cigars of his own manufacture in the city of New York, and in the course of his business has used (as he is entitled to) the union label aforesaid, and built up a profitable trade.   The wages received by members of the union are about three dollars higher per thousand cigars than the wages received by other cigar-makers; and cigars bearing the union label are worth in the market three dollars per thousand more than they would be worth without it, because in public estimation the label is a guaranty that the cigars bearing it have been made by competent workmen, in clean and healthy shops. By the use of the genuine label in question on cigars of his own manufacture the complainant has made great profits, and the public has also been protected from purchasing inferior cigars.   Since the adoption of the union label, and since complainant began to use the same, the defendants have conspired to cheat and defraud complainant and other members of the union, as well as the public, by making and selling and offering for sale counterfeit labels for cigar boxes.   The label made and sold by defendants is a fac simile of the union label, and cannot fail to deceive.   In furtherance of the scheme to defraud, defendants have adopted a fictitious name under which they manufacture and sell the counterfeit label in question, and they also have their correspondence concerning the same sent to a false address in the city of St. Louis.

whence it is forwarded to defendants' real place of business. By making and selling such spurious and counterfeit labels to cigar manufacturers throughout the country, the public is deceived, and a great pecuniary loss is occasioned, which is borne by the complainant and other members of the union who, like him, manufacture and sell cigars, and make use of the genuine union label in the course of their business to enhance the value of their product and increase the demand therefor. Such, in brief, is the case made by the bill.

*Brilsen, Steele & Knauth* and *Hough, Overall & Judson*, for complainant.
*Chester H. Krum*, for defendants.

THAYER, J., (*after stating the facts as above.*) On the facts stated I think that complainant is entitled to equitable relief. It is no doubt true that the union label does not answer to the definition ordinarily given of a technical trade-mark, because it does not indicate with any degree of certainty by what particular person or firm the cigars to which it may be affixed were manufactured, or serve to distinguish the goods of one cigar manufacturer from the goods of another manufacturer, and because the complainant appears to have no vendible interest in the label, but merely a right to use it on cigars of his own make, so long, and only so long, as he remains a member of the union. In each of these respects the label lacks the characteristics of a valid trade-mark. The court cannot interfere in this instance, as in ordinary trade-mark cases, on the ground that one person is intentionally or unintentionally appropriating a mark, symbol, design, or word which has become the exclusive property of another when used by him to distinguish goods of a certain class. In short, this is not a trade-mark case. As I view it, it is a bill filed to restrain the defendants from perpetrating a fraud which injures the complainant's business, and occasions him a pecuniary loss. Even where no trade-mark was infringed or involved, courts of equity have granted injunctions on more than one occasion against the use upon goods of certain marks, labels, wrappers, etc., when the evident design of such use was to deceive the public by concealing the true origin of the goods, and making it appear that they were the product of some other manufacturer of established reputation, thereby depriving the latter of a portion of the patronage that would otherwise come to him, or injuring the reputation of his goods. *Croft* v. *Day*, 7 Beav. 84; *McLean* v. *Fleming*, 96 U. S. 245; *Wotherspoon* v. *Currie*, L. R. 5 H. L. 508; *Seixo* v. *Provezende*, L. R. 1 Ch. 195; *Thomson* v. *Winchester*, 19 Pick. 214; *Perry* v. *Truefitt*, 6 Beav. 66; *Newman* v. *Alvord*, 51 N. Y. 189; *Avery* v. *Meikle*, 81 Ky. 73; *Burton* v. *Stratton*, 12 Fed. Rep. 696; *Chemical Co.* v. *Myer*, 31 Fed. Rep. 453; Browne, Trade-Marks, §§ 43, 44. No valid reason can be assigned why the principle which underlies these decisions does not entitle the complainant to relief. The right of the court to grant relief in the cases cited was predicated on the ground that the conduct of the parties proceeded against, in intentionally marking, labeling, wrapping, or advertising their wares so that they would be mistaken for the goods of some other manufacturer, was fraudulent. That, and

the fact that the fraud complained of had a natural tendency to injure the business of the person whose marks, labels, etc., had been simulated, by lessening his sales or injuring the reputation of his goods, was held sufficient to give the person who had thus sustained or was liable to sustain special damage a right to equitable relief.   In the case at bar complainant shows that he has a clear right to use the union label, and that the right to use it is a valuable privilege, inasmuch as it enhances the value of the cigars which he manufactures and sells, and increases the demand therefor.

It does not appear from the averments of the bill that the action of the Cigar-Makers' Union, in adopting a label to distinguish cigars made by its members, was or is in any respect unlawful, or opposed to public policy.   On the other hand, the action of the defendants is confessedly fraudulent.   The demurrer admits that they are engaged in making and selling counterfeit labels purporting to have been issued by the "Cigar-Makers' International Union of America." The bill avers that the sale of such counterfeit labels injures the complainant's trade and business, and such would seem to be the necessary and immediate result of such fraudulent acts.   In other words, complainant shows that he has sustained such special pecuniary damage as gives him the right to complain of the fraud.   It is true that the bill does not show that the defendants have affixed any of the spurious labels to cigars of their own manufacture, or that they have sold any cigars bearing the counterfeit certificates or labels.   But this is not important.   From the fact that they have made and sold spurious labels and advertised them for sale the court must presume that defendants intend that they shall be used on cigar boxes by the persons who buy them, and that they manufacture and sell them for that purpose.   The conduct of the defendants is equally as culpable as that of the manufacturers of cigars who buy and use the spurious labels, and the loss which complainant sustains by the use of the same on cigar boxes is as directly attributable to the persons who make and sell the counterfeit labels, as to the dealers in cigars who buy and use them.

In conclusion I will add that my attention was called, on the hearing of the demurrer, to a recent decision of the supreme court of Minnesota affecting the union label in the case of *Protective Union* v. *Conhaim*, 41 N. W. Rep. 943; also to a decision of the court of chancery of New Jersey in the case of *Schneider* v. *Williams*, 14 Atl. Rep. 812.   In both of those cases the bill seems to have been framed upon the theory that the union label was a technical trade-mark, and that as such it was the property of the members of the union in the aggregate, and that any one or more members of the union, whether they were or were not engaged on their own account in the manufacture and sale of cigars and in the use of the label, might maintain a suit to restrain an unauthorized party from using the label.   The decision in each case was adverse to such contention.   The bills appear to have been filed by persons and by an association who were not engaged in the manufacture and sale of cigars on their own account.   Hence they were not injuriously affected by the

fraudulent acts complained of, or, if they were liable to suffer a pecuniary loss to any extent or at any time in consequence of such acts, the loss to be apprehended was indirect and speculative. It may well be conceded that the plaintiffs in those cases had no such property rights involved as would enable them to maintain an action, even on the theory on which this decision proceeds. The case at bar differs from those cases, however, in the respect before mentioned, that complainant is himself a manufacturer of cigars, and, according to the averments of the bill, has built up a profitable trade by the use of the union label, which trade has been damaged, and is liable to be further damaged, by the fraudulent acts of the defendants. I think that he is entitled to relief on the facts stated in the amended bill, and accordingly overrule the demurrer.