### G. HEILEMAN BREWING CO. v. INDEPENDENT BREWING CO.

(Circuit Court of Appeals, Ninth Circuit.   November 6, 1911.)

1. TRADE-MARKS AND TRADE-NAMES (§ 92*)—EQUITY (§ 148*)— SUIT FOR INFRINGEMENT—UNFAIR COMPETITION—PLEADING—JOINDER.

A bill, alleging the imitation by defendant of complainant's label, registered as a trade-mark, and that defendant has placed on its own goods labels in so nearly the exact form and configuration of complainants as to deceive purchasers and induce them to purchase its goods as those of complainant. states a cause of action for unfair competition as well as for infringement of trade-mark, which causes may properly be joined.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 102; Dec. Dig. § 92:* Equity, Dec. Dig. § 148.*

Unfair competition in use of trade-mark or trade-name, see notes to Scheuer v. Muller. 20 C. C. A. 165; Lare v. Harper & Bros., 30 C. C. A. 376.]

2. TRADE-MARKS AND TRADE-NAMES (§ 85*)—SUIT FOR INFRINGEMENT—RIGHT TO MAINTAIN.

The fact that a label registered as a trade-mark, as used by the proprietor. has thereon a notice of copyright, even if such notice misrepresents the fact, does not constitute such a misrepresentation as could mislead or defraud the public or purchasers of the goods on which the label is used. and does not affect the right of the owner to maintain a suit for infringement of its trade-mark or unfair competition by imitation of such label by another.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 94; Dec. Dig. § 85.*]

3. TRADE-MARKS AND TRADE-NAMES (§ 92*)—SUIT FOR INFRINGEMENT—PLEADING.

The fact that a label registered as a trade-mark, as used by the proprietor. does not bear the notice of registration required by Act Feb. 20, 1905, c. 592, § 28, 33 Stat. 730 (U. S. Comp. St. Supp. 1909, p. 1286), which provides that in a suit for infringement no damages shall be recovered by a party failing to so give notice "except on proof that the defendant was duly notified of infringement and continued the same after such no-

tice," does not render a bill for infringement demurrable where its allegations are ample to let in proof under the exception.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 102; Dec. Dig. § 92.*]

4. TRADE-MARKS AND TRADE-NAMES (§ 43*)—VALIDITY OF TRADE-MARK—USE PRIOR TO REGISTRATION.

Under Trade-Mark Act Feb. 20, 1905, c. 592, § 2, 33 Stat. 724 (U. S. Comp. St. Supp. 1909, p, 1276), which requires proof of use of a trademark, such as to give the applicant the exclusive right thereto to entitle it·to registration, the use of a label prior to its registration as a trademark does not constitute a publication which invalidates the trade-mark.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 43.*]

5. TRADE-MARKS AND TRADE-NAMES (§ 60*)—INFRINGEMENT—IMITATION OF LABEL.

Exact simulation of a label constituting a trade-mark is not necessary to infringement, but it is·sufficient if the resemblance is such as to deceive an ordinary purchaser giving such attention to the same as such a purchaser usually gives.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 73, 74; Dec. Dig. § 60.*]

6. TRADE-MARKS AND TRADE-NAMES (§ 92*)—INFRINGEMENT—IMITATION OF LABEL—PLEADING.

A bill for infringement of a trade-mark, consisting of a distinctive label used on bottles containing beer made by complainant designated "Old Style Lager," which set out the original and alleged infringing labels, held to show on its face such intentional similarity between the two labels as to constitute infringement.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Dec. Dig. § 92.*]

Appeal fom the Circuit Court of the United States for the Northern Division of the Western District of Washington.

Suit by the G. Heileman Brewing Company against the Independent Brewing Company. Decree for defendant, and complainant appeals. Reversed.

This cause comes here on demurrer to the bill of complaint; the demurrer having been sustained and the bill dismissed.

The complaint sets forth, in effect, omitting the formal parts, that complainant has for more than eight years preceding the commencement of the suit manufactured at La Crosse, in the state of Wisconsin, a certain high quality of beer which it has marked and designated by the use of a label, which said label has been employed for the purpose of identifying the true and genuine product of the complainant and the quality of the goods bearing such mark. A copy of the label is annexed to the complaint and marked "Exhibit A."

It is further alleged, upon information and belief, that, prior to the adoption of the label and mark by complainant, it had not been used by others to designate the same or a similar kind of goods; that the same was original with complainant, and does now and always has designated the true and genuine manufacture of complainant, except for the use thereof by defendant in manner as alleged;·that upon application and compliance with the statutes, rules, and regulations pertaining to the registration of trade-marks, complainant·obtained from the United States Patent Office a certificate of registration of its said label, bearing date June 25, 1907, and numbered 63,492, a certified copy.being annexed to the complaint.

The mark of complainant used·for designating beer is described as consisting "essentially of a conventional or typical·Dutch or German scene with

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

an inn and table surrounded by drinkers and with a subterranean or under-
lying passage, recess, or room showing vats, barrels, or other receptacles such
as are ordinarily employed for storing beer, together with a scene of a cooper
or coopers making or working upon the building of a barrel or butt," which,
it is alleged, was original with complainant, and has been used exclusively
by complainant for designating the beer of its manufacture for the period
designated, namely, since about January 1, 1902, except its wrongful use by
defendant, which use has been by continuously and uninterruptedly applying
the same directly to bottles or other receptacles containing beer of complain-
ant's manufacture, and which said beer has been shipped, transported, and
sold in interstate commerce between the state of Wisconsin and many other
states of the United States.°

The complainant further shows that it has expended large sums of money
and a great amount of labor in perfecting, advertising, and exploiting its
said beer, to the end that the quality of said beer shall and has become known
to the public; that the public, by reason of such excellence of quality and
by such exploiting has come to know the beer, the manufature of complainant,
as and for a high grade and quality of beer, and to know that said beer is
designated by the mark and label attached to the complaint, and the same
is purchased and designated by the purchasing public by the mark and label
aforesaid; that complainant is now and always has been since about the said
1st day of January, 1902, the sole and exclusive owner of the said mark and
label, and is now entitled to the sole and exclusive use of the same in the
designation of its product.

It is then further shown that "with full knowledge in the premises and of the
reputation of your orator's beer and of the demand existing for the same
and in the use and meaning of your orator's said mark and label consisting
of the Dutch or German drinking scene with the subterranean room or pas-
sage containing barrels or butts as indicating and identifying the quality,
origin, and genuineness of your orator's beer, the defendant, the Independent
Brewing Company, of Seattle, in the county of King and state of Washing-
ton, the corporation as aforesaid, meaning and intending to divert and se-
cure to itself such portions of the good will of your orator's business in man-
ufacturing and selling beer and to destroy for its own profits by unlawful
means the reputation of and demand for your orator's beer wholly without
your orator's consent and against its repeated protests, has manufactured
and sold beer of a quality different from and inferior to your orator's beer
in this district and elsewhere, and has used upon such beer in connection
with the sale of the same your orator's trade-mark in so nearly the exact
form and configuration as employed by your orator as to deceive purchasers
into believing that the beer the manufacture of the defendant was and is the
beer manufactured by your orator, and to confuse and defraud the public in-
to purchasing the defendant's beer believing it to be the beer of your orator."
A copy of the mark and label employed and used by the defendant is also
attached to and made a part of the complaint, being marked "Exhibit C."

The complaint further shows that the defendant employs the said label ex-
emplified by Exhibit C in the same manner as complainant employs the label
exemplified by Exhibit A upon the pure and genuine manufacture of com-
plainant, by attaching the said label directly to the bottles containing the
beer and manufacture of defendant. "That the bottles to which said labels
of your orator as exemplified by Exhibit A and the infringing label and mark
as exemplified by Exhibit C are cylindrical in form and of such proportion
that the labels exemplified by Exhibits A and C, when so attached to bottles
as aforesaid, are not visible in their entirety, but only in sections, and that
certain sections of the label exemplified by Exhibit C more nearly resemble
corresponding sections of your orator's label exemplified by Exhibit A than
as is the case with other sections." That the defendant (this on information
and belief) "has sold beer not manufactured by or for your orator bearing
the said fraudulent trade-mark and label among the several states of the
United States, and has without your orator's consent reproduced, counterfeited,
copied, and plainly obviously imitated your orator's said trade-mark and
label to your orator's great loss and injury." "That the defendant continues
to unlawfully interfere with and divert your orator's business and the prof-

its therefrom to its own use and behoof, and that the public has been and continues to be misled, and that the beer the manufacture of the defendant has been and continues to be sold as and for the true and genuine beer of your orator's manufacture for many years known and in demand as hereinbefore set forth, and that the use by the defendant of the said infringing mark of your orator and of his peculiar configuration displayed thereon has the effect of enabling and promoting the impairment of the reputation of and the demand for your orator's beer, and the fraudulent and unlawful sale and substitution of the defendant's beer as and for the beer of your orator's manufacture to your orator's great loss and injury and to the great loss and injury of the public." This is followed by appropriate allegations respecting the value of the good will of complainant's business and the value of its right to the exclusive use of said trade-mark, and the amount of injury it sustains annually by reason of defendant's infringement of its said trade-mark, together with a prayer for an accounting and injunctive relief.

The demurrer assigns as reasons therefor the following:

"(1) That said bill does not state facts sufficient to constitute a cause of action in favor of the complainant.

"(2) That there appears no equity in the bill.

"(3) That it appeareth by complainant's showing in said bill that it is not entitled to the relief prayed for, nor to any other form of relief, against the defendant.

"(4) That it appeareth by said bill that complainant's claim of right to relief is based upon the fraud of complainant itself, and other fraud, and such bill should be dismissed."

G. Ward Kemp, E. T. Fenwick, and L. L. Morrill, for appellant.

R. S. Jones, for appellee.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

WOLVERTON, District Judge (after stating the facts as above). [1] The appellee insists at the outset that the bill of complaint states a cause of suit for the infringement of a trade-mark only, and not at all for unfair competition in trade. In this we think counsel is in error. A suit for unfair competition may be maintained where there is no lawful trade-mark involved, which consists essentially in palming the goods of one manufacturer or vendor off for the goods of another. This is a fraud not only upon the manufacturer whose goods are assimilated and replaced in the market, but upon the general public as well, which does not get what it supposes it is bargaining for. For the fraud thus perpetrated, the individual or the manufacturer, as the case may be, has his or its cause of suit to prevent the recurrence of the imposition, and for such damages as may have been sustained on account of it. Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 11 Sup. Ct. 396, 34 L. Ed. 997; Elgin Nat. Watch Co. v. Illinois Watch Co., 179 U. S. 665, 21 Sup. Ct. 270, 45 L. Ed. 365; Draper v. Skerrett (C. C.) 116 Fed. 206. A fortiori a suit may be maintained for unfair competition when the infringement of a trade-mark is resorted to as a means of accomplishing the purpose. As is said in the books, "Trade-mark infringment is but one form of unfair competition." Hopkins on Trade-Marks, 44. In such a case it is altogether appropriate that the party claiming to be injured should conjoin allegations of infringement with averments of unfair competition. Indeed, he could not well state his case otherwise. There can be no objection, therefore, to joining the two causes of suit in one com-

plaint, and it is true also that he might succeed in one cause alone and fail in the other. By fair intendment the complaint in the present cause combines both elements of fraud, infringement, and unfair competition in trade. This appears sufficiently by such allegations as "that said beer is purchased and designated by the purchasing public by the said mark and label appearing upon said beer," and that the defendant "has used upon such (the defendant's) beer in connection with the sale of the same your orator's trade-mark in so nearly the exact form and configuration as employed by your orator as to deceive purchasers into believing that the beer the manufacture of the defendant was and is the beer manufactured by your orator, and to confuse and defraud the public into purchasing the defendant's beer believing it to be the beer of your orator," and further:

"That the defendant continues to unlawfully interfere with and divert your orator's business and the profits therefrom to its own use and behoof, and that the public has been and continues to be misled, and that the beer the manufacture of defendant has been and continues to be sold as and for the true and genuine beer of your orator's manufacture for many years known and in demand as hereinbefore set forth, and that the use by defendant of the said infringing mark, of your orator and of his peculiar configuration thereon has the effect of enabling and promoting the impairment of the reputation of and the demand for your orator's beer, and the fraudulent and unlawful sale and substitution of the defendant's beer as and for the beer of your orator's manufacture, to your orator's great loss and injury and to the great loss and injury of the public."

[2] It is next insisted that the complaint shows on its face that the plaintiff has been continuously perpetrating a fraud upon the public by holding out that its label has been copyrighted. The copy of the complainant's label attached to the complaint contains the words printed upon its face at the lower-right hand corner thereof in small type, "Copyright 1902 G. Heileman Brewing Co." Nothing is contained in the complaint respecting the copyright, nor is anything claimed because of the fact that the label was in reality copyrighted. It is quite true that the trade-mark relied upon, and which is claimed to be infringed, if it contains misrepresentations misleading to the public, cannot be made the basis of relief in equity. Thus, when it is the object of the trade-mark to indicate the origin of manufactured goods, and a person affixes to goods of his own manufacture a trade-mark which represents that they are the manufacture of some other person, the representation operates as a fraud upon the public which equity will not countenance. Manhattan Medicine Co. v. Wood, 108 U. S. 218, 2 Sup. Ct. 436, 27 L. Ed. 706. To the same effect is Connell v. Reed, 128 Mass. 477, 35 Am. Rep. 397. The principle, however, has no application to counsel's contention, for if it may be said that the words "Copyright 1902 G. Heileman Brewing Co." misrepresent the fact, and there is nothing to show that they do, no one, neither the public nor any individual, could be misled to its or his injury thereby. They in no way contain any representation touching the goods which the label is designed to designate.

[3] It is next urged that no suit can be maintained because the registered label or trade-mark does not have affixed thereto the words "Registered in the United States Patent Office," or the abbreviation

"Reg. U. S. Pat. Off.," as required by statute. · Section 28 of the Act of Congress of February 20, 1905, c. 592, 33 Stat. 730 (U. S. Comp. St. Supp. 1909, p. 1286). This statute imposes the duty upon the registrant to give notice to the public of registration by affixing upon the registered trade-mark the words or abbreviation above denoted, and it provides that no damages shall be recovered in any suit for infringement by a party failing to give such notice as provided, except on proof that the defendant was duly notified of infringement and continued the same after such notice. The averments of the complaint are ample to let in proof under the exception, and this disposes of the contention without further interpretation of the statute.

[4] In the same relation it is further urged that:

"The claim to a trade-mark of a label is void if the label is published before it is registered as a trade-mark"—citing Bump on Patents and Trade-Marks (2d Ed.) p. 502, and notes.

This authority is not at present accessible; but, whatever may be its text, in this country a trade-mark is acquired by use, and the use must antedate registration. Without it registration cannot be had. By section 1 of the act of February 20, 1905, supra, the owner of a trade-mark domiciled in this country is entitled to have the same registered, and by section 2, in order to procure registration, he must show that such trade-mark is used in commerce among the several states or within foreign countries. So that registration comes only after acquirement of the right to a trade-mark by use. See, also, Hopkins on Trade-Marks, §§ 25–27. The complaint shows user prior to registration. If that be publication, complainant did only what the statute required of it. The objection is untenable.

[5] The last and cardinal contention is that the label used by the defendant is not an infringement upon complainant's trade-mark. A simple inspection of the two labels, as shown by Exhibits A and C attached to the complaint, convinces one that the defendant's label was suggested by that of complainant, which latter consists essentially, as is alleged in the complaint, of a conventional or typical Dutch or German scene, and the situation is really resolved into the question whether the defendant has so differentiated its label in the manner of its design and detail of execution as to avoid infringement of complainant's label. There is a manifest effort at artful simulation to be attended with barely sufficient differentiation to escape infringement. Has the defendant succeeded, and does the complaint so show upon its face?

Some reference to the authorities will aid us in the solution. McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828, is a leading case upon the subject. The court there says:

"Much must depend, in every case, upon the appearance and special characteristics of the entire device; but it is safe to declare, as a general rule, that exact similitude is not required to constitute an infringement or to entitle the complaining party to protection. If the form, mark, contents, words, or the special arrangement of the same, or the general appearance of the alleged infringer's device, is such as would be likely to mislead one in the ordinary course of purchasing the goods, and induce him to suppose that he was purchasing the genuine article, then the similitude is such as entitles the

injured party to equitable protection, if he takes seasonable measures to assert his rights, and to prevent their continued invasion. * * *

"Colorable imitation,. which requires careful inspection to distinguish the spurious trade-mark from the genuine, is sufficient to maintain the issue; but a court of equity will not interfere, when ordinary attention by the purchaser of the article would enable him at once to discriminate the one from the other. Where the similarity is sufficient to convey a false impression to the public mind, and is of a character to mislead and deceive the ordinary purchaser in the exercise of ordinary care and caution in such matters, it is sufficient to give the injured party a right to redress, if he has been guilty of no laches. * * *

"Two trade-marks are substantially the same in legal contemplation, if the resemblance is such as to deceive an ordinary purchaser giving such attention to the same as such a purchaser usually gives, and to cause him to purchase the one supposing it to be the other."

The lower federal courts have uniformly announced the principle in numerous cases. In Enoch Morgan's Sons Company v. Hunkele, Fed. Cas. No. 4,493 it is said:

"It is not a question whether the defendant has in all respects imitated the trade-mark of the complainant, but whether he has so imitated it that the purchaser has been imposed upon."

So in Shaw Stocking Co. v. Mack (C. C.) 12 Fed. 707, the court affirms:

"It is not necessary that the resemblance produced should be such as would mislead an expert, nor such as would not be easily detected if the original and the spurious were seen together. It is enough that such similitude exists as would lead an ordinary purchaser to suppose that he was buying the genuine article and not an imitation."

And again, in Cantrell & Cockrane v. Butler (C. C.) 124 Fed. 290, the court says:

"Conformity of one label to another sufficiently to attract and deceive is not excused by ability to analyze the offending label and point out differences. which if known and recognized would avoid confusion. The ensemble does the mischief; the usual purchaser neither abstracts nor analyzes for the purpose of diferentiation and judgment."

To the same purpose is Eagle White Lead Co. v. Pflugh (C. C.) 180 Fed. 579, where the court says:

"The question of infringement is to be determined by the test of dominancy. The dissimilarity in size, form, and color of the label and the place where applied are not conclusive. If the competing label contains the trade-mark of another, and confusion or deception is likely to result, infringement takes place, regardless of the fact that the accessories are dissimilar. Duplication or exact imitation is not necessary; nor is it necessary that the infringing label should suggest an effort to imitate."

In Kostering v. Seattle Brewing Co., 116 Fed. 620, 621, 54 C. C. A. 76, 77, this court said:

"It is argued. and it is true, that the differences are apparent to any one who will read and examine the labels; but that argument does not meet the question which the case presents: Are the resemblances between the two labels such that the consumer is likely to be misled?"

And again, in Keuffel & Esser Co. v. H. S. Crocker Co. (C. C.) 118 Fed. 187, 189:

"While the words alone, if considered apart from the label as a whole, might not be deemed to present so close a resemblance as to constitute in-

fringement, when connected with the associated lettering and general design, and forming a part of a label almost identical in size, shape, coloring, and lettering with that of the complainant applied to similar goods, it is very clear that the mind of the purchaser would readily be deceived by the similarity, and be quite as easily induced to purchase the goods of one as the other."

And in stating the law applicable, the court further said:

"It requires the defendant, in offering his goods to the public, to use such method of wrapping, labeling, and cataloguing of his packages as not to lead an intending purchaser, of ordinary intelligence, using ordinary care, into the mistaken belief that he is purchasing goods placed upon the market by the complainant, when in fact he is purchasing the defendant's goods."

[6] A comparison of the alleged infringing label with complainant's label will show striking features of distinct similarity among others less conspicuous that bear less or no resemblance. Both labels were undeniably designed to represent a typical Dutch or German scene. Each contains in representation an inn with people drinking at a table outside. The inn occupies the upper center of the defendant's label, back of which appears the brewery of the manufacturer, while in complainant's it occupies the upper right-hand side. Immediately beneath the representation of the inn in each label is a subterranean or underlying recess or room containing three barrels or casks; there being printed in German type on the heads of these, as shown by complainant's label, "Old Style Lager," and on the defendant's, "Old German Lager." On the complainant's label two persons, one with receptacle in hand, are passing by, while at the right are two workmen coopering a barrel, and at the left three monks at table drinking. On the defendant's label are represented four monks seated at a table in front of the casks or barrels in the subterranean way, and at the left in the lower left-hand corner are two artisans coopering a barrel. On the complainant's label is represented a boiling kettle in another underlying passage, with two brewers attending it. This appears a little below the center of the scene, and another kettle is seen to the left hanging on a support over a fire, apparently unattended. Below this latter is represented a Bacchanalian scene. On the left margin of defendant's label is represented a kettle over a fire, not hanging, with persons about it apparently filling the kettle with ingredients, while above in the upper left-hand corner are two men at a tank stirring the brew. The Baccahnalian scene is not represented on this label. On the complainants' label may be seen also a man on horseback, he drinking from a mug and the horse from a watering trough in which is flowing water gushing from the rocks; this at the right of the scene; and in the center is found an ox cart to which are yoked a pair of oxen, while within the cart is a man drinking from a mug, and a man by the side of the cart waiting upon him. On defendant's label are represented at the lower right-hand corner a husbandman pitching hay or provender of some kind; above that, near the right center, a man plowing with a yoke of oxen; and still above, in the upper right-hand corner, women apparently gathering hops in a hop field. The complainant's label shows a sign hanging from a scroll attached to the cornice of the inn, with the words "Old Style Lager" printed thereon in German type, and the defendant's sign hanging above the inn from a scroll attached to a

standard with the words "Old German Lager" printed thereon in German type. Across the left margin of the complainant's label are printed the words "Brewed and Bottled by G. Heileman Brewing Co., La Crosse, Wis.," and some German script is found at the top, to the left of the center. On the defendant's label in the center at the bottom is written "Brewed and Bottled by the Independent Brewing Co.," the name of the firm appearing in German type, and below that: "Seattle, Wash. Guaranteed by the Independent Brewing Co. under the Food and Drug Act, June 30. 1906"—all in English type. There are other minor features pertaining to the labels, but not of peculiar moment. The complainant's label shows green in its general tone, with drab and light orange shading for the buildings, stone walls, and scenery about. The defendant's label, the same as attached to the complaint, appears in its general tone a light olive green shaded to a light orange; the shading bearing some resemblance to that of the complainant's.

Now, to one scanning the detailed description of these two Dutch scenes, or laying the pictures side by side, there could be no trouble in distinguishing the one from the other. But this is not the test. Will confusion result to the purchasing public by the use of the two not brought into direct or special comparison? Would the ordinary customer applying at the counter for "Old Style Lager," observing the care customary with purchasers in that way, be likely to be deceived or misled into buying "Old German Lager," if it was offered him marked with defendant's label? We are impressed that he would.

A simulation of the most prominent and distinctive features of the complainant's label is found in the defendant's label. The inn is there, with the legend in slightly different wording suspended from a scroll; the representation of men drinking at a table outside of the inn is there; the barrels or casks in the subway are there; the monks drinking at a table at or near the casks are there; and the coopering of a barrel is there. In short, the "ensemble" is there, and that, says the court in Cantrell & Cockrane v. Butler, supra, does the mischief. And quoting again:

"The usual purchaser neither abstracts nor analyzes for the purpose of differentiation and judgment."

The complaint, fairly construed, we think, shows infringement upon the face of it. What the evidence may show at the trial is quite a different thing.

The judgment of the Circuit Court will therefore be reversed, and the cause remanded, with direction to overrule the demurrer.