## J. N. COLLINS CO. v. F. M. PAIST CO.

(District Court, E. D. Pennsylvania.
September 23, 1926.)

No. 3037.

1. Trade-marks and trade-names and unfair competition &ominus;70(4)—Manufacturer of candy held guilty of unfair competition in use of package similar to competitor's.

Manufacturer of candy customarily sold by displaying on stand or counter, where it could be picked up by buyer without negotiations, *held* guilty of unfair competition in adopting open package of about same size, arrangement, and colors as that of competitor, and likely to be mistaken therefor, though *differences* were readily observable on examination.

2. Trade-marks and trade-names and unfair competition &ominus;67—Object of law is to protect honest trader and public, and punish dishonest trader.

The law has a threefold object in unfair competition cases: (1) To protect the honest trader in business which fairly belongs to him; (2) to punish the dishonest trader, who is taking his competitor's business away by unfair means; and (3) to protect the public from deception.

3. Trade-marks and trade-names and unfair competition &ominus;70(4)—Courts look with suspicion on one who dresses his goods so nearly like his competitor as to be likely to cause deception.

The courts look with suspicion on one who approaches so near the dress of a business rival, that the public may fail to distinguish between them.

4. Trade-marks and trade-names and unfair competition &ominus;67—Law of unfair competition is not for protection of experts, but the general "public."

The law of unfair competition is not made for the protection of experts, but the "public," which includes the ignorant, the unthinking, and the credulous, who in making purchases are governed by appearance and general impressions.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Public.]

5. Trade-marks and trade-names and unfair competition &ominus;70(1).

One selling a product similar to that of another first in the field, must distinguish it as his own production.

In Equity. Suit by the J. N. Collins Company against the F. M. Paist Company. On hearing on bill, answer, and proof. Decree for complainant.

A. C. Paul, of Minneapolis, Minn., E. S. Rogers, of Chicago, Ill., and Henry P. Brown and Kennard N. Ware, both of Philadelphia, Pa., for plaintiff.

I. Smith Raspin and R. J. Sterrett, both of Philadelphia, Pa., for defendant.

THOMPSON, District Judge. This is a suit to restrain alleged unfair competition in trade, with an accounting for profits and recovery of damages. The plaintiff and defendant are now and have been for many years engaged in the manufacture of the candy familiarly known as "butter scotch." The plaintiff, by reason of the use of honey as a flavoring material in its product, designates it by the trade-mark name "Honey Scotch." Butter scotch is and has been made by both the plaintiff and defendant and other manufacturers in small square pieces or tablets, each wrapped in yellow wax paper.

[1] The plaintiff had, some years prior to the filing of the bill, adopted as a characteristic dress for its "Honey Scotch" a package consisting of a small open box of proper size to contain 10 of the wrapped butter scotch units, arranged on edge therein, and projecting about a quarter of an inch above its walls. Oblong boxes for packing and exposing for sale units of candy are known in the trade as "boats." The outer surfaces of the plaintiff's boat are of a Scotch plaid design, the ground of which is red, and the plaid design is effected through crossed stripes of black and lighter crossed stripes of yellow. The packages containing 10 units are retailed for 5 cents. The plaintiff's butter scotch is largely sold at news stands, drug stores, cigar stands, and in railway stations. The method of displaying it for sale by the retailer is usually to lay the packages out upon the stand or counter, so that a purchaser may pick up a package and put down the coin without inquiry or negotiation with the retail vendor. By the end of 1923, the plaintiff, through the excellence of its product, had built up an extensive trade throughout the United States. It produced, manufactured, and sold an average of more than 10 tons, or 180,000 of the small packages, a day, and its product was distributed by it to more than 6,000 jobbers, and to the public by more than 200,000 retailers. The plaintiff has established a large factory in Philadelphia for the manufacture of this particular product.

The defendant is a manufacturer of butter scotch, and has been for many years putting out its product in small tablets wrapped in yellow wax paper, and was putting it out in that form before the plaintiff commenced to manufacture its "Honey Scotch." Three or four months before the filing of the bill the defendant adopted a package and arrangement for its butter scotch units which the plaintiff contends is

so close an imitation of the dress of its product as to constitute unfair competition. The defendant packed at first 12 and afterward 11 of its units in an open box or boat slightly longer than that of the plaintiff, with the units set on edge and projecting above the sides of the boat, the outer surface of which is colored with red and blue stripes, with the name "Mackey Butter Scotch" in yellow. The defendant's packages are also sold at retail for 5 cents. The butter scotch units are wrapped in yellow wax paper with red lettering on, as are those of the plaintiff; that manner of wrapping having been adopted by the defendant prior to the manufacture of "Honey Scotch" by the plaintiff. The defendant's butter scotch is distributed to the same class of retailers as that of the plaintiff.

There is testimony to show that purchasers, having asked for "Honey Scotch," were handed by the retailer a package of the defendant's "butter scotch." While, upon examination by one who is attempting to discover differences or distinctions between the two packages, it may be readily observed that the plaintiff's boats are of Scotch plaid design, with red and black the predominating colors, and that the defendant's boat has alternating red and dark blue stripes, red being the brighter, and therefore the predominating, color in each, and the plaintiff's package is labeled "Collins Honey Scotch," while the defendant's package is labeled "Mackey Butter Scotch"; yet under the circumstances in this case the ability to distinguish between the two upon inspection, having for its object the ascertainment of differences, is not the true test.

The evidence shows that the ordinary retail purchaser of 5-cent butter scotch frequently makes his purchase by picking up a package from the stand or counter while purchasing a newspaper on the way to or from his train, a cigar or tobacco at a cigar stand, drugs or other articles in a drug store, and carries that package away with him without any negotiations. In other words, in this case, more than in the ordinary case, the article is sold to an unwary purchaser, and it is from the circumstances under which this casual or unwary purchaser is likely to buy the article that we must examine the dress of the two packages, and determine whether the defendant has attempted to encroach upon the trade and good will of the plaintiff, by simulating the dress of the plaintiff's goods. There is no doubt in my mind that the defendant's package could be and is likely to be readily mis-

taken for that of the plaintiff. The arrangement in the boxes, with the units projecting above the sides, is so nearly the same as to be practically identical. The trifling differences in the lengths of the respective boxes and the extent of the projection of the units above the sides cannot save the defendant from the effect of the general similarity. The red coloring in the two is the same. The blue stripes upon the defendant's box are dark enough to be mistaken for the black upon the plaintiff's box.

The defendant defends its package by proof that other kinds of candy, such as caramels, chocolates, and mints, put up in packages to retail for 5 or 10 cents, were packed in open boxes prior to the adoption by the plaintiff of its package for butter scotch. We are not dealing here with what others have done in retailing small 5 and 10 cent packages of candies in general. The question is: What was the purpose and intention of the defendant in adopting a package of a size, coloring, shape, and method of arrangement so nearly similar to that of the plaintiff as to create an appearance which is likely to deceive the eye of the ordinary purchaser?

In selecting candy in the manner in which this is sold, the purchaser at best makes a brief inspection, and notes only the distinguishing features of the package. That fact is established by the testimony of numerous witnesses. It is sufficiently established that it is not common in the trade to put up 5-cent packages of butter scotch in open boats with the candy units extending above the top of the walls; that this feature was first adopted by the plaintiff; but that the defendant has not only adopted this particular feature, but has adopted a package which in coloring and arrangement of colors is likely to deceive the eye of the unwary. The purchaser identifies the package by its general appearance, and not by meticulous inspection.

[2-4] The law has a threefold object in unfair competition cases: First, to protect the honest trader in business which fairly belongs to him; second, to punish the dishonest trader, who is taking his competitor's business away by unfair means; and, third, to protect the public from deception. It is so easy for the honest business man, who wishes to sell his goods upon their merits, to select from the entire material universe, which is before him, symbols, marks, and coverings which by no possibility can cause confusion between his goods and those of competitors, that the courts look with

suspicion upon one who, in dressing his goods for the market, approaches so near to the dress of those of his business rival that the public may fail to distinguish between them. The law is not made for the protection of experts, but for the public—that vast multitude, which includes the ignorant, the unthinking, and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearance and general impressions. Florence Manufacturing Co. v. J. C. Dowd & Co., 178 F. 73, 101 C. C. A. 565.

[5] The one who is selling a product similar to that of another must sell it as his own production. To paraphrase the language of Jessel, Master of the Rolls, in Re Worthington & Company's Trade-Mark, L. Rep. 14 Ch. D. 8, if he is honestly desirous of distinguishing his own goods from the goods of others, he will choose a dressing for his goods not resembling that of some successful competitor, because his anxiety and desire must be that the public should by no possibility mistake his goods for the goods of anybody else. While it is a fact that the defendant wrapped its units in yellow paper with red printing thereon prior to the plaintiff so doing, and therefore simulation of the plaintiff's article cannot be predicated on that alone, yet that point of similarity, when added to the similarity in package, coloring, and design, does not justify an encroachment upon the plaintiff's good will by conveying a false impression upon the mind of the ordinary purchaser.

The facts force the conclusion that the get-up of the defendant's packages was designed by the defendant for the purpose of obtaining the advantage of the good will which the plaintiff had obtained by the excellence of its product and the distinctive and attractive style of its packages, through deception of the retail purchaser, by palming off its goods for those of the plaintiff.

Counsel may prepare and submit a decree for the plaintiff, an injunction, and an accounting for profits and damages.