### BAKER et al. v. MASTER PRINTERS UNION OF NEW JERSEY.

Civ. No. 162.

District Court, D. New Jersey.

Sept. 19, 1940.

Findings of Fact.

WALKER, District Judge.

The following are the facts found specially:

1. International Typographical Union (hereinafter called "Typographical") is a voluntary association and a trade union composed of working men (printers), commonly known as "Typographers", consisting of more than seven members, to wit: approximately 80,000 members, with its headquarters and principal office in the City of Indianapolis, County of Marion and State of Indiana.

2. Typographical is composed of a Board of Officers, consisting of a president, vice presidents, secretary, treasurer and an executive council, in addition to its membership of which the officers and executive council are a part, and the officers and members of the executive council are citizens and residents of states other than New Jersey.

3. Some of the members of Typographical are citizens of the State of New Jersey.

4. The members of Typographical constitute a class so numerous, it is impracticable to bring them before the court. Typographical therefore, by resolution regularly moved, seconded and carried, designated Claude M. Baker, Francis G. Barrett, John Connolly and Woodruff Randolph, its president, first vice president, second vice president and secretary and treasurer, respectively, of the City of Indianapolis in the State of Indiana, and Thomas Martin, its third vice president of the City of Cleveland in the State of Ohio, who are also all of the members of its executive council, as the sole representatives to bring this action on behalf of all the members of Typographical, and they fairly insure the adequate representation of all said members. They will be hereinafter referred to as "Typographical".

5. The character of the right sought to be enforced for the members of Typographical as a class is common.

6. On September 26, 1939, the United States Patent Office registered Typographical's label as a trademark under No. 371429, for use on certain goods in Class 37 (paper and stationery).

7. The defendant, Master Printers Union of New Jersey (hereinafter referred to as "Masters"), is a corporation incor-

Meyer M. Semel, of Newark, N. J., for plaintiffs.

Morris G. Fredman, of Jersey City, N. J., for defendant.

810

porated in the State of New Jersey on May 5, 1936.

8. On May 2, 1936, the defendant, Masters, filed in the office of the Secretary of State of New Jersey its statement for the registration of the trademark "Master Printers Union Label of New Jersey", under the laws of New Jersey.

9. Typographical by its amended complaint seeks to restrain the alleged infringement of its trademark (label), and to restrain the alleged unfair competition in the defendant's use of a label similar to its and such other relief as may be granted.

10. Typographical has not established an actual or an immediately threatened use of the defendant's label in interstate commerce.

11. Typographical has spent money and has done many things to advertise its trademark (label) and enhance the value of its good will, all of which are here sought to be protected and the value of which is in excess of $3,000.

12. Typographical permits printing establishments throughout the United States to place the Typographical trademark upon its products when same are done by its members, under its supervision and control. In order to regulate this practice, it has organized throughout the several states of the Union and the counties and municipalities thereof, branches commonly known and designated as "Locals", which are also authorized to permit such a use subject to the aforesaid supervision or control.

### Discussion.

■ The court has jurisdiction because the citizenship of the representatives selected by Typographical is wholly diverse from that of the defendant, a corporation of the State of New Jersey, and it has spent money and done many things to advertize its trademark (label) and enhance the value of its good will, all of which are here sought to be protected and the value of which is in excess of $3,000.

Typographical, more than twenty-three years ago, created and adopted a label of geometric shape and design for the purpose of characterizing, distinguishing and designating the work and products of its members and members of its affiliates, and on September 26, 1939, it registered said label as a trademark in the United States Patent Office under No. 371,429, for use on certain goods in Patent Office Class 37 (paper and stationery).

The defendant, Masters, was incorporated in the State of New Jersey on May 5, 1936, and a short time prior thereto, certain persons who subsequently became members under the plan proposed by said corporation, met and designed a label to be used in the printing industry by those who became members. On the date said persons convened and for many years prior thereto, there was an established custom in the printing trade of affixing labels to work done by members of labor unions and the shops authorized to affix such labels were known as "Union Shops". The persons who conceived the Master Printers Union of New Jersey and those who subsequently became members, operated what is generally known as "Non-Union Shop".

There was also a custom in the trade of placing chapel numbers alongside union labels, and these chapel numbers identified the particular shop doing the work, and members of Masters copied or adopted the same practice and placed chapel numbers alongside of the label used by them, which according to the testimony, identified the shop operated by said member.

This court finds the defendant imitated and simulated Typographical's label, and that its label is an infringement of the Typographical label, and that defendant and its members have competed unfairly with Typographical.

■ It is true that when compared side by side, differences as well as similarities are apparent in the labels of Typographical and Masters, but that is not the test. G. Heileman Brewing Co. v. Independent Brewing Co., 9 Cir., 191 F. 489, 497; Liggett & M. Tobacco Co. v. Hynes, D.C., 20 F. 883. In all cases of this type, the consumer is rarely, if ever, afforded an opportunity to make a side by side comparison. He must rely upon his memory. William Waltke & Co. v. Geo. H. Schafer & Co., 49 App.D.C. 254, 263 F. 650; Godillot v. American Grocery Co., C.C., 71 F. 873, 874; Scriven et al. v. North et al., 4 Cir., 134 F. 366, 379; Florence Mfg. Co. v. J. C. Dowd & Co., 2 Cir., 178 F. 73, 75.

The person to be considered is "the incautious purchaser." (Battle & Co. v. Finlay et al., C.C., 45 F. 796, 798.) "The law is not made for the protection of experts, but for the public—that vast multitude, which

includes the ignorant, the unthinking, and the credulous, who, in making purchases, do not stop to analyze, but are governed by appearance and general impressions." J. N. Collins Co. v. F. M. Paist Co., D.C., 14 F.2d 614, 616; Florence Mfg. Co. v. J. C. Dowd & Co., supra.

This case brings to the attention of the court a deliberate, calculated and not too subtle fraud. Men, when seeking a symbol by which they would identify themselves and the product of their labor, should select a trademark which will be different from the trademarks or symbols of others already established in their competitive field, the object being to have a mark and good will which stand apart from all others. However, there are some men who would pass off their goods as and for the goods of another, and who, therefore, seek to identify their goods with the goods of another and who adopt every means of confusing their goods with the goods of another. It goes without saying that a group of men wishing the advantages of a union label, and seeking to avoid the expenses incident thereto might, if they wish to fly under colors other than their own, conceive, execute and attempt to profit by a scheme such as was unfolded during the trial herein.

There are also certain advantages which the defendant would obtain by copying Typographical's trademark. Of course, few would be stupid enough to make exact copies of another's mark or symbol. It has been well said that the most successful form of copying is to employ enough points of similarity to confuse the public with enough points of difference to confuse the courts.

Masters has sought to convey the impression that it is a labor union in the sense in which that term is generally and properly understood. It is not a labor union. It is an association of printers owning and operating what are generally known as "open shops", and in order to convey the impression that it is a labor union, defendant incorporated under the name "The Master Printers Union of New Jersey", and the word "Union" conveys to the mind, and in the opinion of this court, was intended to convey to the mind, the impression that defendants are a group of union working men, and that their products are the products of union labor. The power through suggestion to awaken the imagination and direct the mind to a

predetermined goal has not been overlooked. Williamson Candy Co. v. Ucanco Candy Co., D.C., 3 F.2d 156, 158. This case does not require that the court decide, nor does it decide, the right of a group of employers or manufacturers to use the word "Union" in a corporation or business title. The use, however, by Masters of the word "Union" is very much before the court, because the adoption of this word is a step in a carefully planned scheme to defraud and compete unfairly with Typographical. A scheme, which shows that not content with adopting a name that would convey the impression that the products of the members of the defendant corporation are the products of Union labor, as the terms are generally understood, defendant furthered the impression by adopting what it is pleased to call a "Union label". Defendant's logic that every Union has its Union label is unassailable.

Defendant having created the aforementioned impression then went a step further and sought to convey the impression that its label was in fact the label of Typographical, and that its products were in fact the products of Typographical. It did this by simulating Typographical's label, its registered trademark. The use of the word "Union" in its corporate title, the use of a "Union" label, the use of the words "Union label", the use of a label deceptively similar to Typographical's label, the use of a chapel number, are with many of the other things herein shown by the record, the parts which, when put together form the finished mosaic whereby the fraudulent design of the defendant is clearly spelled out.

■ Defendant, it is true, was incorporated in the State of New Jersey on May 5, 1936, but the issuance of its corporate charter did not confer on it any right wrongfully to use a name nor was it an adjudication by the State of the legality of the name chosen. Great Atlantic & Pacific Tea Co. v. A. & P. Radio Stores, Inc., D.C., 20 F.Supp. 703, 707; Hudson Tire Co., Inc., v. Hudson Tire & Rubber Corp., et al., 276 F. 59.

Typographical, by its testimony, has shown actual deception and confusion on the part of the buying public, even to the extent of showing that the Constitution of the Industrial Union of Marine and Shipbuilding Workers of America affiliated with the C. I. O., was printed by a member

of the defendant corporation, and that the label of the defendant as affixed thereto, was taken for a union label for some time and until the fact that it was not was called to the attention of said Industrial Union of Marine and Shipbuilding Workers of America, then its Constitution was reprinted by the shop having chapel #15 and employing members of Typographical.

The defendant, of course, contends that fraudulent intent is absent, but no actual fraudulent intent need be shown where the necessary and probable tendency of the defendant's conduct is to deceive the public and pass off its goods or business as and for that of Typographical. Hilton v. Hilton, 90 N.J.Eq. 564, at page 567, 107 A. 263, at page 264; A. Hollander & Son, Inc., v. Philip A. Singer & Bro., Inc., 119 N.J.Eq. 52, 180 A. 671, at page 676.

The defendant is guilty of trademark infringement and unfair competition and the prayer of Typographical for an injunction as to each is granted.

One further point should be mentioned here. A trademark case is in fact a case of unfair competition and the law of trademarks is only a part of the broader law of unfair competition. United Drug Company v. Theodore Rectanus Company, 248 U.S. 90, 39 S.Ct. 48, 63 L.Ed. 141. An action for unfair competition does not necessarily involve the violation of any exclusive right to the use of a word, mark or symbol. Croft v. Day, 7 Beav. 84. Typographical's label may be considered under two aspects: (1) As a union label per se, and (2) as a trademark applied to the certain named products for which it has been registered in the United States Patent Office. Even if this court were to consider Typographical's label solely as a union label and not as a trademark, Typographical is entitled to equitable relief. It is no doubt true that a union label considered as such does not answer to the definition ordinarily given of a technical trademark because it does not indicate with any degree of certainty by what particular person or firm the products to which it may be affixed were manufactured or

serve to distinguish the goods of one manufacturer from the goods of another manufacturer. In these respects the union label, considered merely as such, lacks the characteristics of a valid trademark. (Carson v. Ury et al., C.C., 39 F. 777, 779.) In the case at bar as in the case of Carson v. Ury, supra, Typographical seeks to restrain the defendant from perpetrating a fraud. Even when a trademark was not infringed or involved, courts of equity have granted injunctions on more than one occasion against the use upon goods of certain marks, labels or wrappers where the evident design of such use was to deceive the public by concealing the true origin of the goods. McLean v. Fleming, 96 U.S. 245, 24 L.Ed. 828; Croft v. Day, supra. As was said by the court in Carson v. Ury, supra [39 F. 779]: "No valid reason can be assigned why the principle which underlies these decisions does not entitle the complainant to relief." In this case Typographical has a right to its union label and has a right to the benefits that normally and properly flow from the use of such label. Defendant will not be permitted to divert to itself such rights and benefits.[1]

Typographical also seeks an accounting for the profits derived from the sale of the goods bearing the infringed label. However, in the opinion of this court, the difficulty and expense of an accounting would be disproportionate to the amount recoverable. The court in Ludington Novelty Co. v. Leonard et al., 2 Cir., 127 F. 155, 157, covered the problem here when it stated: "The master would be involved in an inextricable tangle from which it will be impossible to emerge with a substantial recovery based upon a rational rule of damages."

Damages for infringement are not mandatory under the statute. The Trademark Act of 1905, 15 U.S.C. § 99, 15 U.S.C.A. § 99, authorizing recovery of damages for trademark infringement, does not require an accounting and recovery of damages where there are laches. Golden West Brewing Co. v. Milonas & Sons, Inc., 9 Cir., 104 F.2d 880.

---

[1] Of considerable interest and help on the subject of trademarks and labels, see: Trademark Protection and Unfair Trading, Walter J. Derenberg, 1936; Commercial Prints and Labels: A Hybrid in Copyright Laws; Walter J. Derenberg, 49 Yale Law Journal, 1212; Has Congress the Constitutional Power to Legislate on the Substantive Law of Trademarks? Sylvester J. Liddy, VI, Fordham Law Review, 408.

An accounting would be ordered if it did not appear:

1. Typographical for a long time has known what defendant has been doing, and did not take any legal steps as far as the record herein appears, until it filed its complaint in this cause.

2. The testimony herein indicates that neither upon the existing record, nor upon any record before a Master, could there be a substantial recovery.

3. The duty to account in a case such as this is ordinarily a matter of right and of course, and the difficulty of stating same is no excuse, yet all things considered, it seems inadvisable to permit further time and effort to be expended.

### Conclusions of Law.

This court finds the defendant, its officers, agents, servants, members and employees imitated and simulated Typographical's label, and that Masters label is an infringement of the Typographical label, and that Masters, its officers, agents, servants, members and employees have competed unfairly with Typographical.

The defendant, its officers, agents, servants, members and employees are guilty of trademark infringement and unfair competition and the prayer of Typographical for an injunction as to each is granted.

An accounting for the profits derived from the sale of the goods bearing the infringed label is denied, because the Master would be involved in an inextricable tangle from which it would be impossible to emerge with a substantial recovery based upon a rational rule of damages.

An order in accordance with the findings of fact and conclusions of law should be presented.