ROSSMANN v. GARNIER.

(Circuit Court of Appeals, Eighth Circuit. January 27, 1914.)

No. 3783.

1. COURTS (§ 292*)—JURISDICTION OF UNITED STATES COURTS—CASES ARISING UNDER TRADE-MARK LAWS.

The federal courts have jurisdiction of all matters arising under the trade-mark statute, even though both parties be citizens of the same state.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 834; Dec. Dig. § 292.*]

2. COMMERCE (§ 3*)—STATUTORY PROVISIONS—VALIDITY—"TRADE-MARK."

Congress had power under Const. U. S. art. 1, § 8, cl. 3, authorizing it to regulate foreign and interstate commerce and commerce with the Indian tribes, to enact the trade-mark laws (Act March 3, 1881, c. 138, 21 Stat. 502 [U. S. Comp. St. 1901, p. 3401]; Act Aug. 5, 1882, c. 393, 22 Stat. 298 [U. S. Comp. St. 1901, p. 3404]; and Act Feb. 20, 1905, c. 592, 33 Stat. 724 [U. S. Comp. St. Supp. 1911, p. 1459]), especially as a "trademark" is a distinctive mark of authenticity through which the products of particular manufacturers or the vendible commodities of particular merchants may be distinguished from those of others.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 3; Dec. Dig. § 3.*

For other definitions, see Words and Phrases, vol. 8, pp. 7042–7048.]

3. TRADE-MARKS AND TRADE-NAMES (§ 42*) — STATUTORY PROVISIONS — VALIDITY.

The provision of Trade-Mark Act Feb. 20, 1905, c. 592, § 5, 33 Stat. 725 (U. S. Comp. St. Supp. 1911, p. 1461), that nothing therein shall prevent the registration of any mark used by the applicant or his predecessor or by those from whom title to the mark is derived in interstate or foreign commerce or commerce with Indian tribes which was in actual or exclusive use as a trade-mark of the applicant or his predecessor for ten years next preceding the passage of that act, is not unconstitutional.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent Dig. § 47; Dec. Dig. § 42.*]

4. TRADE-MARKS AND TRADE-NAMES (§ 3*)—MARKS SUBJECT TO OWNERSHIP—DESCRIPTIVE WORDS.

Such provision of Act Feb. 20, 1905, c. 592, § 5, 33 Stat. 725 (U. S. Comp. St. Supp. 1911, p. 1461), is not limited to technical trade-marks, and a word used exclusively for ten years may be registered under that provision even though it is a descriptive word.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 4–7; Dec. Dig. § 3.*]

5. TRADE-MARKS AND TRADE-NAMES (§ 59*)—INFRINGEMENT—WHAT CONSTITUTES.

A trade-mark, consisting of the word "Abricotine" in connection with the initials P. G. on a tabret or shield and the facsimile of a signature was infringed by using the word Abricotine in connection with similar goods.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 68–72; Dec. Dig. § 59.*]

6. TRADE-MARKS AND TRADE-NAMES (§ 82*)—ACTIONS—NOTICE AS CONDITION PRECEDENT.

Under the express provisions of Trade-Mark Act Feb. 20, 1905, c. 592, § 28, 33 Stat. 730 (U. S. Comp. St. Supp. 1911, p. 1470), where the registrant neither gave notice of the registration by affixing a notice to that effect to the articles sold under such trade-mark, nor notified defendant of the infringement, damages were not recoverable for the infringement.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 92; Dec. Dig. § 82.*]

7. EVIDENCE (§ 16*)—JUDICIAL NOTICE—FOREIGN LANGUAGE.

In a suit for infringing a trade-mark, judicial notice would not be taken that the word "Abricotine" is a word in general use in the French language in connection with French commerce and descriptive of apricot cordial, since, while the court is bound to take judicial notice of the ordinary meaning of words in our own language, it has judicially neither memory nor understanding of the French language, and judicial notice as to uses and customs is confined to our own country.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 20; Dec. Dig. § 16.*]

8. TRADE-MARKS AND TRADE-NAMES (§ 93*)—ACTIONS—SUFFICIENCY OF EVIDENCE.

Under Trade-Mark Act Feb. 20, 1905, c. 592, § 5, 33 Stat. 725 (U. S. Comp. St. Supp. 1911, p. 1461), authorizing the registration of any mark in actual and exclusive use as a trade-mark by the applicant or his predecessor in title for ten years next preceding the passage thereof, and section 16, making the registration of a trade-mark prima facie evidence of ownership, the prima facie case made by the registration of a trade-mark, containing as a part thereof the word "Abricotine" in connection with cordials, was not overcome by the presence of the word "Abricotine" as applied to liqueurs in a French encyclopedia bearing a date subsequent to the date of the beginning of the ten-year period and more than 20 years

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

after the original registration of complainant's French trade-mark; it not appearing that it was not complainant's product that placed the term in the encyclopedia.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. §§ 104–106; Dec. Dig. § 93.*]

9. TRADE-MARKS AND TRADE-NAMES (§ 47*) — EFFECT OF FOREIGN REGISTRATION.

Under article 6 of the convention of March 20, 1883 (25 Stat. 1376), for the protection of industrial property, providing that every trade-mark regularly deposited in the country of origin shall be admitted to deposit and so protected in all other countries of the Union thereby constituted, the owner of a trade-mark registered in France was entitled to protection in this country, whether or not such mark would have been allowed under the laws of this country.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 55; Dec. Dig. § 47.*]

Hook, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Suit by Caroline Henriette Garnier against Tekla Rossmann. From a decree for plaintiff (195 Fed. 175), defendant appeals. Modified and remanded, with directions.

James A. Carr, of St. Louis, Mo. (Albert C. Davis, of St. Louis, Mo., on the brief), for appellant.

James L. Hopkins, of St. Louis, Mo. (A. Parker Smith, of New York City, on the brief), for appellee.

Before HOOK and SMITH, Circuit Judges, and VAN VALKENBURGH, District Judge.

SMITH, Circuit Judge. This suit was brought by the appellee, Caroline Henriette Garnier, to enjoin the appellant, Tekla Rossmann, from infringing a registered trade-mark, to restrain her from unfair trade, and for an accounting, and resulted in a decree as prayed.

November 1, 1910, Caroline Henriette Garnier registered in the Patent Office as a trade-mark for cordials the following:

She alleged in her statement that she was a citizen of France residing at Enghien-les-Bains, France, and the trade-mark had been used in her business and that of her predecessor, Andre Georges Garnier, since on or about the 1st day of August, 1872. She alleged in her declaration that said trade-mark had been registered in France and that the same had been in actual use as a trade-mark of the appellant and her predecessor from whom title was derived for ten years next preceding the passage of the act of February 20, 1905, and to the best of her knowledge and belief

**ABRICOTINE**

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

·such use had been exclusive. In her bill of complaint ·Mrs. Garnier says that defendant Tekla Rossmann is engaged in selling a cordial under the name ."Abricotine" upon which the complainant claims a trade-.mark in commerce between the several states.

The appellant, first denies that the court had any jurisdiction of ·this suit except under .the trade-mark law because it is not shown that the complainant is a citizen of France.

In the view taken by the court it is sufficient to say that all the mat-·ters which will be passed upon arise under the trade-mark law, and it is therefore unnecessary to consider this question.

[1] The federal court has jurisdiction of all matters arising under ·the trade-mark statute even though both parties be citizens of the same state. Elgin National Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 21 Sup. Ct. 270, 45 L. Ed. 365.

[2] The defendant claims the entire trade-mark law of 1905, 33 Stats. 724, is unconstitutional, and inferentially the same contention is made as to the act of 1881, 21 Stats. 502, and of 1882, 22 Stats. 298.

The first trade-mark legislation passed by Congress was in 1870, ·chapter 230 of the Laws of the Forty-First Congress, and is found in 16 Stats. 198. That was entitled "An act to revise, consolidate, and .amend the statutes relating to patents and copyrights."

Sections 77 to 84 of this act referred exclusively to trade-marks. There was nothing in the act to refute the presumption quite apparent from its title that it was enacted.by Congress in the supposed exercise of its powers under the eighth clause of the eighth section of the first article of the Constitution.

"Sec. 8. The Congress shall have power: * * * To promote the progress ·of science and useful arts by securing for limited times to authors and inventors the exclusive right to their respective writings and discoveries."

In 1876, 19 Stats. 141, Congress passed an act to punish the counterfeiting of trade-mark goods and the selling or dealing in such goods. This act was for the further security or protection of trade-mark holders under the act of 1870.

In the Trade-Mark Cases, 100 U. S. 82, 25 L. Ed. 550, the Supreme Court held that no power to pass trade-mark legislation was conferred by the provision of the Constitution quoted and that, as the laws of 1870 and 1876 made no distinction between trade-marks used in intrastate commerce and those used in foreign commerce, interstate commerce, and commerce with the Indian tribes, both of said acts were necessarily void. This decision was rendered in October, 1879, and it was in conformity with what was supposed to have been laid down by ·the Supreme Court in those cases that all the subsequent legislation ·upon the subject has been enacted. . It is probably true that the con-·stitutionality of the more recent legislation has never been expressly passed upon by the Supreme Court of the United States, but that legislation has now stood for more than 30 years. It has been enforced by the United States Supreme Court and all the other courts of the United States, and we see no reason to suppose the law is not sustainable under clause 3 of section 8 of article 1 of the Constitution:

"The Congress shall have power: * * * To regulate commerce with for-·eign nations, and among the several states, and with the Indian tribes."

In the Trade-Mark Cases, supra, the Supreme Court said:

"Whether the trade-mark bears such a relation to commerce in general terms as to bring it within congressional control, when used or applied to the classes of commerce which fall within that control, is one which, in the present case, we propose to leave undecided."

And again:

"In what we have here said we wish to be understood as leaving untouched the whole question of the treaty-making power over trade-marks, and of the duty of Congress to pass any laws necessary to carry treaties into effect."

In Elgin National Watch Co. v. Illinois Watch Case Co., 179 U. S. 665, 673, 21 Sup. Ct. 270, 273 (45 L. Ed. 365), the Supreme Court said:

"The term (trade-mark) has been in use from a very early date, and, generally speaking, means a distinctive mark of authenticity, through which the products of particular manufacturers or the vendible commodities of particular merchants may be distinguished from those of others."

Surely if this be a correct definition of a trade-mark regulations for the registering and protection of them in connection with commerce, interstate or foreign, or with the Indian tribes, is legitimate legislation in connection with the regulation of such commerce. Surely if such marks are distinctive badges of authenticity it is as much a part of the regulation of interstate commerce to regulate them as are the branding features under the pure food law.

This court cannot therefore hold that such legislation is unconstitutional en bloc.

[3, 4] The act of 1905 contains the following provision:

"That nothing herein shall prevent the registration of any mark used by the applicant or his predecessors, or by those from whom title to the mark is derived, in commerce with foreign nations or among the several states, or with Indian tribes, which was in actual and exclusive use as a trade-mark of the applicant or his predecessors from whom he derived title for ten years next preceding the passage of this act." 33 Stats. 726, § 5.

It is contended that at least this so-called ten-year clause is unconstitutional. It was held otherwise in Thaddeus Davids Co. v. Davids et al., 178 Fed. 801, 102 C. C. A. 249; Id. (C. C.) 190 Fed. 285; Id., 192 Fed. 915, 114 C. C. A 355; Coca-Cola Co. v. Deacon Brown Bottling Co. et al. (D. C.) 200 Fed. 105; Coca-Cola Co. v. Nashville Syrup Co. (D. C.) 200 Fed. 153, 157; Hughes et al. v. Alfred H. Smith Co. (D. C.) 205 Fed. 302; In re Cahn, Belt & Co., 27 App. D. C. 173.

The last case presents a question of construction but not one of constitutionality.

It is apparent that a technical trade-mark is entitled to registration without reference to the ten-year clause, and, if none but technical trade-marks are entitled to be registered under it, then it might as well have been omitted.

It will be observed that section 5 provides that any mark, not trade-mark, which was in actual and exclusive use as a trade-mark for ten years before the passage of the act, may be registered. This contemplates that any mark which was not a technical trade-mark, but which had been actually and exclusively used by the applicant or his predecessor for the required time could be registered as a trade-mark. This

being true, there was no reason why the complainant could not register the word "Abricotine" under the ten-year clause, even assuming it was a descriptive word, if she and her predecessors had used it exclusively for the ten-year period as a trade-mark. Section 16 of the act of 1905 provides that the registration of a trade-mark under the provisions of this act shall be prima facie evidence of ownership. The application having been made under the ten-year clause, and there being no evidence tending to negative the prima facie case made under section 16, the court finds that complainant owned the trade-mark under the ten-year clause, and this entirely aside from the question as to whether Abricotine was the proper subject of a trade-mark aside from the ten-year clause.

[5] It is insisted that the trade-mark registered was the tabret or shield and the initials which appeared thereon and the facsimile of the signature of "P. Garnier" or else was of the entire inscription, and that defendant had the right to use the word "Abricotine" taken from said trade-mark.

This seems to have been fully answered in Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19, 21 Sup. Ct. 7, 45 L. Ed. 60, where it is said:

"It is not necessary to constitute an infringement that every word of a trade-mark should be appropriated. It is sufficient that enough be taken to deceive the public in the purchase of a protected article. * * * The reports are full of cases where bills have been sustained for the infringement of one of several words of a trade-mark."

In that case it was held that a trade-mark upon bitter waters of "Hunyadi Janos" was infringed by the use of the words "Hunyadi Matyas" on similar waters.

The defendant contends there is no evidence that she has sold the cordial in question except locally in Missouri. She ignores the fact that she filed the following in the trial court:

"And for answer to the interrogatory numbered 1 contained in said bill of complaint this defendant says that she has never sold or caused to be sold any cordials or liquor or goods of similar descriptive properties under the trade-mark Abricotine; but that she has sold such goods bearing a label having the word Abricotine thereon as a descriptive word in association with other matter as hereinbefore stated and that such goods have been sold in commerce between the several states of the United States since the 1st day of November, 1910."

The appellee seems to place some reliance on the fact that she claims to be a citizen of France and, as we understand it, claims certain rights under the trade-mark convention proclaimed July 6, 1869; but owing to doubt as to the sufficiency of the evidence to show her citizenship of France, to the absence of proof of compliance with the terms of that convention, and doubts as to the effect upon such convention of the provisions of the act of 1905, we leave all questions as to whether she has any rights under said convention undisposed of.

[6] The court below not only granted an injunction as prayed, but granted an accounting.

Section 28 of the act of 1905, 33 Stats. 730, is as follows:

"Sec. 28. That it shall be the duty of the registrant to give notice to the public that a trade-mark is registered, either by affixing thereon the words

'Registered in U. S. Patent Office,' or abbreviated thus, 'Reg. U. S. Pat. Off.,' or when, from the character or size of the trade-mark, or from its manner of attachment to the article to which it is appropriated, this cannot be done, then by affixing a label containing a like notice to the package or receptacle wherein the article or articles are inclosed; and in any suit for infringement by a party failing so to give notice of registration no damages shall be recovered, except on proof that the defendant was duly notified of infringement, and continued the same after such notice."

It does not appear that in the use of the trade-mark the appellee ever complied with the requirement that she give notice to the public by affixing thereto the words "Registered in U. S. Patent Office," or "Reg. U. S. Pat. Off.," nor on a separate label, nor is there any evidence that any notice was ever given appellee of the infringement.

It follows that no damages can be recovered and no use would be subserved by an accounting.

The writer fully concurs in the separate opinion of VAN VALKEN-BURGH, District Judge.

The decree of the District Court is therefore affirmed as to all but the awarding of an accounting, but the case is remanded, with directions to the court to set aside so much of the decree as grants such an accounting.

VAN VALKENBURGH, District Judge (concurring). Counsel for appellant in their brief raise the following points:

1. The certificates of trade-mark are invalid and inoperative as evidence in this cause: (a) Because the trade-mark act of February 20, 1905, is unconstitutional and inoperative; (b) because said act limits infringements to such as occur in interstate commerce.

2. Said certificates of registration do not purport to protect the use of the word "Abricotine," but only the signature and initials on the shield.

3. Use in interstate commerce was not shown, and the jurisdiction therefore failed.

4. The word "Abricotine" is descriptive and incapable and adoption as a trade-mark.

5. The court erred in awarding an accounting of profits.

It is doubtful whether the assignments of error are broader than this; but, if so, such as are not included within the points relied on in the brief may be treated as abandoned. In the argument, beginning on page 5 of appellant's brief, the contentions are still further limited. It is evident that appellant elected to stand upon, first, unconstitutionality of the 10-year clause; second, failure of proof as to use in interstate commerce; third, the failure of the certificates to protect the word "Abricotine" apart from the signature, initials, and shield; fourth, the award of accounting.

We hold the act of 1905 to be constitutional. The mark was regularly registered under that act; this makes a prima facie case of ownership in appellee. Under that act the declarant is not limited to marks which are confessedly the subject of technical trade-mark; but terms not otherwise admissible as such are protected, provided the ten-year exclusive use of the mark is shown. This showing was made in the pre-

scribed manner to the Patent Office. It was accepted, and the certificate issued; this makes a prima facie case of ownership which it was incumbent upon appellant to overcome by satisfactory proof. Appellant has elected to stand upon the legal propositions urged. She made no attack by evidence upon the validity of certificate or mark.

When we uphold the act of 1905, many of the vexatious questions presented are removed. In the record it is conceded that the infringement occurred in interstate commerce. Registration under the act of 1905 established in appellee the ownership of a trade-mark, which stands for construction as any technical statutory mark. In Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19–33, 21 Sup. Ct. 7, 45 L. Ed. 60, it was established that it is not necessary to constitute an infringement that every word of a trade-mark should be appropriated. It is sufficient that enough be taken to deceive the public in the purchase of a protected article. As this record stands, it would appear that the word "Abricotine" was an essential and vital part of the mark. This disposes of all the contentions of appellant except that respecting the accounting, and this point we have resolved in her favor.

[7, 8] I say this disposes of all the contentions of appellant, unless we may still consider whether the word "Abricotine" is a word in general use and merely descriptive of apricot cordial. As I have said before, I do not think we can do so upon this record in the face of a valid registration under a valid act of Congress which gives to this mark the same legal effect as any other recognized technical mark. Some substantial showing, of which we can take cognizance, would be necessary to that end. Appellant should abide by the theory upon which she has elected to submit her case. There is in the record nothing which places before the court the part which the word "Abricotine" plays in the French language, nor the relation between that name and the cordial in French commerce; nor do we take judicial notice of such facts whatever they may be. As to uses and customs, we are confined to our own country. Michie's Encyclopedia of United States Supreme Court Reports, vol. 7, p. 676; Dainese v. Hale, 91 U S. 13, 23 L. Ed. 190. The court is, of course, bound to take judicial notice of the ordinary meaning of all words in our own tongue (Michie, vol. 7, p. 680); and upon such a question dictionaries are admitted, not as evidence, but only as aids to the memory and understanding of the court (Nix v. Hedden, 149 U. S. 304–307, 13 Sup. Ct. 881, 37 L. Ed. 745). We have, judicially, neither memory nor understanding of the French language, and appellant has not seen fit to enlighten us by the record. We do take judicial notice of well-known facts in history such as political questions which go to form current history; well-known facts in legal history; certain recognized facts in economic history. But the question of use of a trade-mark, or trade-name, in foreign commerce is not history in this sense. Except in a very limited way and in matters of confessed notoriety, or involving universal experience, we do not permit presumed knowledge of such matters to control our decision in patent and trade-mark cases in our own country. Proof of use and the time and extent thereof are required; much less should we assume such knowledge affecting a foreign jurisdiction and a for-

eign language. The mere presence of the word "Abricotine" as applied to liqueurs in a French encyclopedia bearing a date subsequent to the beginning of the ten-year period, and more than twenty years later than the alleged original registration of complainant's French trademark, cannot be received as establishing a prior general use that would defeat complainant's claim. For aught that appears Garnier's product may have placed the term in the encyclopedia. As I have said, a prima facie case was made. The burden then shifted to defendant. She has elected to stand upon this meager record; and we are asked to try this case mainly by the French dictionary, in the absence of important and, perhaps, controlling concrete facts. Such a process is too abstract and incomplete for the determination of valuable property rights. C., B. & Q. R. Co. v. United States, 211 Fed. 12, 127 C. C. A. ——, decided at the September term of this court.

[9] In the view I take, then, I do not think we may here determine, as an independent proposition, whether the word "Abricotine" could be indulged as a technical trade-mark, nor whether appellee has enjoyed the exclusive use of that mark for the statutory period as she alleges. I freely concede, from the able and learned argument of the dissenting opinion, that those questions are debatable. I express no opinion respecting them, and do not think the court can do so in this case. This may be said, however, that if the appellee could and did obtain French trade-marks, as she swears she did in her affidavit for registration, then under article 6 of the treaty for the protection of industrial property of March 20, 1883 (25 Stat. 1376), to which both France and the United States were parties, she would be entitled to protection in this country, whether or not we would have allowed such a mark as an original proposition under our laws. However, as is pointed out in the majority opinion, it is doubtful whether her citizenship is sufficiently proved to enable her to avail herself of the benefits of this convention. I mention it to show that the probable equities are not all on one side in any view of the case. For the reasons stated, I am constrained to concur in Judge SMITH'S opinion.

HOOK, Circuit Judge (dissenting). This is a case of technical, statutory trade-mark, not of unfair competition. The trade labels of defendant are so unlike complainant's no one could be deceived. The sole resemblance is in the use of the word "Abricotine" as the name of the cordial or liqueur which both sell. In no other way is it claimed defendant trespasses. Complainant relies on two registrations of a trademark in the Patent Office, one November 6, 1906, the other November 1, 1910. The latter trade-mark is shown in the foregoing opinion to consist of a shield outline inclosing the initials "P. G.," the word "Abricotine," and the name "P. Garnier" in script. The former is precisely like it, except that it contains in addition the words, "Liqueur extraite du Fruit l'Abricot," facsimiles and descriptions of certain medals and the address, Enghien-les-Bains. Complainant evidently sought by each registration to avail herself of the provision of the act of February 20, 1905:

"That nothing herein shall prevent the registration of any mark * * * which was in actual and exclusive use as a trade-mark of the applicant or his

predecessors from whom he derived title for ten years next preceding the passage of this act." 33 Stat. 725, § 5.

The first application for registration lacked averment of the ten years' actual and exclusive use and was probably deemed insufficient under the above provision, so in the second the actual use for the ten years was stated, and it was averred that to the best of the applicant's knowledge and belief the use was exclusive. Recitals in the application show that each related to the same trade designations previously used, yet they were different in that, as already observed, some features of the first were omitted from the second. This difference is not important in itself, but is referred to merely to give point to a suggestion to be made presently.

The statute limits our inquiry to the ten years preceding its passage. During that period "Abricotine" was in the French language the common name of the liqueur having the flavor of the apricot which was used in its manufacture. Abricot has for centuries been the French name of the fruit we call apricot, and the word "Abricotine" came in the well-known way of the growth and development of languages— the addition of the suffix "in" or "ine" to root words—just as quinine, glycerin, glycerine, acontine, and a host of others. The beaten path was followed in naming the antiseptic listerine after Sir Joseph Lister, though an arbitrary term was probably coined, since Lister was not the root name of an element in the product. The period of exclusive use required by the statute and claimed by complainant is from February 20, 1895, to February 20, 1905. I have said that during this period "Abricotine" was the well-known, established, specific name of the article which both parties sell. Complainant did not coin it; it was in the vocabulary and she gave it no new meaning or application. In volume 22, La Grande Encyclopedie, published in Paris, May 22, 1895–June 30, 1896, under the title "Liqueur" is given a recipe for making the liqueur Kümmel, following which, it is said:

"On peut fabriquer ainsi une foule de liqueurs, anisette, abricotine, menthe, raspail, marasquin" etc.

A person can make in this way a large number of liqueurs, anisette, abricotine and so on. This appeared right at the beginning of complainant's alleged ten-year period of exclusive use. It is assumed in the opinion of the court that Abricotine may be a descriptive term. But more than that, it was from the commencement the specific, substantive name of the commodity. Complainant did not even adapt an old word to a new use; she took a current verbal coin of France, just as we of this country would call a hoe a hoe or a spade a spade, and asks a monopoly of it in this country. But, it is said, we have no judicial knowledge of the French language and there was no sworn testimony on the subject. Of course, broadly speaking, a court will not assume judicial knowledge of a foreign language; but the information needed here is far short of that. All agree that a court may resort to dictionaries in its own language to inform its understanding, and that embraces many things of which it was wholly ignorant before. This conceded right extends to phrases taken from foreign tongues, as, for

example, "en bloc," which appears in one of the foregoing opinions. We use Latin quite freely, and if ignorant or dull of memory we inform ourselves or refresh our understanding like the pupils in the schools. If a foreign dictionary were translated into English, or if some English lexicographer gave the foreign synonyms of the names of articles of trade and commerce (abricot appears as the French for apricot in our unabridged lexicons), doubtless we could consult the publications without testimony as to their accuracy. The real test whether a court may inform itself of the meaning of a word, phrase, or sentence in another language without sworn witnesses should be whether there are ready, convenient means commonly employed in the other walks of life, and whether the information so gained would be indisputably beyond controversy. Those conditions existing, it would seem quite vain to require proof under oath. If complainant had been engaged in putting up tinned meats in Germany instead of liqueurs in France and had applied her arbitrary trade symbol to "Kalbfleisch," could it reasonably be said that a court could not learn the English meaning except through sworn witnesses? A large part of our population, including school children, would know it at once, and most of the others could quickly and accurately inform themselves.

There are two aspects in which this case may be viewed: First, that complainant registered the name "Abricotine" as her trade-mark; second, that she registered an assemblage of marks, names, etc., in which "Abricotine" appeared as the commodity to which the marks were applied. In the foregoing opinion the first is assumed, I think, inadvertently. The trade-mark claimed by the last registration is shown in the opinion to consist of the three things already mentioned and the name "Abricotine." In the statement and verified declaration for the registration the combination is referred to as a whole; the particular name abricotine is not mentioned at all. But if the claim be confined to the word alone, complainant must fail because as a fact there was no exclusive use for the ten-year period. It would be an effort to secure a monopoly of the common name by which an article is known in trade and commerce. It is inconceivable that Congress contemplated such a thing. Though liqueurs are a small and not widely known group of commodities, yet necessarily the same principles apply as to others; and it could as well be said that complainant might appropriate for her sole use such descriptive words and settled names as "Pure Lard," "Corn Meal," and "Sweet Potatoes." There would be no escape from this conclusion. If the name by which an article of nature or manufacture goes has become so established and common that it is set forth in a dictionary or national encyclopedia, can it be said that a private individual thereafter enjoyed the exclusive use of it? Such an appropriation, susceptible of perpetuation by renewal of registration, would be so contrary to public policy that Congress manifestly did not intend it. The registration gives but a prima facie private right which yields to the public right when judicially known.

I think it evident that complainant never registered "Abricotine" as a trade-mark except as it was a part of an assemblage or the common name of the article to which the real trade-mark was applied. There

was no proof of the exclusive use of the name for the ten years except the qualified averment in the declaration for registration and that related to the assemblage as an entirety. Upon this aspect my Brothers say a trade-mark should be regarded as a whole and may be infringed by the use of part. Saxlehner v. Eisner, 179 U. S. 19, 21 Sup. Ct. 7, 45 L. Ed. 60, is cited for the rule that "it is not necessary to constitute an infringement that every word of a trade-mark should be appropriated." But there is a qualification of this rule, one phase of which is expressly recognized in that case. The case related to Saxlehner's trade-mark "Hunyadi Janos" applied to the bitter waters of a well in Hungary. Defendant asserted the right to use the word "Hunyadi" alone, but the court denied it. It said the trade-name selected was "neither descriptive nor geographical but purely arbitrary and fanciful." Defendant also urged that, after Saxlehner adopted the name, the word "Hunyadi" had become a generic term descriptive of the waters of a large number of wells in that region. As to this the court said (179 U. S. page 33, 21 Sup. Ct. 12, 45 L. Ed. 60):

"Of course, if it had become such with the assent and acquiescence of Saxlehner, he could not thereafter assert his right to its exclusive use," but, as he apparently made every effort to stop its use, "it ought not be charged up against his claim that the word had become generic."

Therefore a word may be lost from a trade-mark if it becomes a generic or descriptive name with the owner's acquiescence. It is equally true that if a word is the recognized and established name of an article, and hence not by itself susceptible to appropriation as a trade-mark, it cannot be appropriated by joining with it separable arbitrary symbols and other designations. There can be no doubt of the application of this rule to a case under the ten-year clause of the act of 1905, where the word sought to be appropriated has been so established as the name of the article that in the very nature of things the claimant could not have had its exclusive use. Otherwise the circumstance that no one else had happened to use the entire combination of separable designations could be employed to protect each part separately. The ordinary names of commodities in daily use and words and expressions descriptive of their qualities and properties could be privately monopolized if they happened to have been exclusively used with particular arbitrary symbols and proper names for the ten years preceding February 20, 1905; and quite likely there are many such cases in this country. If complainant's first registration had been effective under the ten-year clause, then by such a construction no other person could lawfully describe his apricot cordial as "Liqueur extraite du Fruit l'Abricot," nor have expressed on his labels the English equivalent of that description. The consequences of such a doctrine would be quite extraordinary. The complainant's just rights would be conserved by treating the trade-mark as consisting of the shield, the contained initials, and the name "P. Garnier," and as applying to the liqueur abricotine. As so construed, the affidavit for registration might be true, and other persons, defendant for instance, would be free to call their product by its right name, provided they did not use complainant's marks or symbols.