STARK et al. v. STARK BROS. NURSERIES & ORCHARDS CO.

(Circuit Court of Appeals, Eighth Circuit. March 25, 1919. Rehearing Denied June 6, 1919.)

No. 5181.

1. TRADE-MARKS AND TRADE-NAMES ☞59(4)—INFRINGEMENT—COLORABLE IMITATION.

Plaintiff's trade-mark, consisting of the word "Stark" above the word "Trees," the former in letters successively decreasing in size, the latter in letters successively increasing in size, *held* infringed by defendants' device, different in shape, and bearing a number of words, but having the word "Stark" in the center, in the largest letters, in white on the dark background of a tree; exact similitude not being necessary, but it being enough that an ordinary purchaser is likely to be deceived when they are not placed side by side.

2. TRADE-MARKS AND TRADE-NAMES ☞59(4)—INFRINGEMENT—USE OF SURNAME.

Right of one to use his surname as a mark, without infringing a registered trade-mark, is subject to the limitation that it be not used in a manner tending to mislead, and that it be clearly made to appear that the articles sold therewith are his, and not those of the registrant.

3. COURTS ☞292—FEDERAL COURTS—JURISDICTION—TRADE-MARKS—UNFAIR COMPETITION.

A federal court has no jurisdiction of suit for unfair competition alone, in the absence of diversity of citizenship, and so in a suit, jurisdiction of which depends solely on it being for infringement of registered trademark, recovery can be had for only such unfair competition as is a part of the same transaction as the infringement; that is, that subsequent to notice of infringement, necessary under Trade-Mark Act, § 28 (Comp. St. § 9514), for recovery for infringement, where notice of registration is not given on the mark.

Appeal from the District Court of the United States for the Western District of Missouri; Arba S. Van Valkenburgh, Judge.

Suit by the Stark Bros. Nurseries & Orchards Company against William P. Stark and others. Decree for plaintiff (248 Fed. 154), and defendants appeal. Modified.

The appellee instituted this action to enjoin the appellants from infringing its registered trade-mark and from unfair competition, with the usual prayer for damages and an accounting of profits. The appellee is a corporation existing under the laws of the state of Missouri, and the appellants, defendants in the court below, are citizens of the same state; the jurisdiction of the court having been invoked upon the sole ground of the registration of the trade-mark under the act of Congress of February 20, 1905, and the amendments thereto (Comp. St. §§ 9485, 9487–9511, 9513–9516).

The complaint charges that the plaintiff now is, and has been since the year 1816, including its predecessors, James Stark, William Stark, Stark & Barnett, Stark & Co., and Stark Bros. Nurseries Company, engaged in the business of propagating, buying, and selling fruit trees and other nursery stock, and ever since 1893 marked them with the words "Stark Trees" as its trade-mark, affixing it to boxes or packages containing its product; that it has incurred great expense in propagating trees and advertising them as "Stark Trees," and that this trade-mark has become widely known in this and.many foreign countries, as indicating a superior grade of trees propagated and sold by the plaintiff and its predecessors: that its fruit trees are invariably bought and sold and commonly designated as "Stark Trees"; that on January 9, 1913, it filed in the United States Patent Office an application for registration of its said trade-mark "Stark Trees" in accordance with the act of Congress of February 20, 1905, and its amendments, and on June 24, 1913, it was duly registered in the United States Patent Office as registration No. 92,282; that it claims the exclusive right to the trade-mark "Stark Trees," or the word "Stark," on fruit and ornamental trees, the trade-name which has always been claimed by its predecessors, they being the first to adopt this mark for nursery stock; that in the spring of 1913 they found sales of fruit trees, labeled and marked with the words "William P. Stark Nurseries," said words being printed across the representation of a short, bushy tree, so arranged that the word "Stark" appeared in large prominent letters across the picture of the tree, and the other words in comparatively smaller type, which, upon investigation, it found was marked and sold by the defendants; that defendants well knew of the exclusive use claimed by plaintiff of the trade-mark "Stark Trees," or any simulation thereof, and that they used the trade-mark "Stark," in conjunction with the representation of a tree, with the intent to defraud and deceive, and have caused their stock to be bought as and for the nursery stock of the plaintiff, much to plaintiff's loss and injury to the public, and the infringement of plaintiff's registered trade-mark, and of its trade-mark rights under the law; that defendants were duly notified of their infringement, but continued to do so since then; that William P. Stark, one of the defendants, was for a number of years an employé, officer, and stockholder of plaintiff, during which time he attempted to and did familiarize his personal name to readers of the' plaintiff's general advertising; that defendants in 1912 established a nursery business, with the principal office at Louisiana, Mo., the home of plaintiff and its predecessors, causing a confusion of mails, which ceased when, by order of the Postmaster General, all mail addressed to the name of "Stark" should be delivered to the plaintiff, whereupon the defendants moved their nurseries to Chester, Mo., and caused the name of the town and post office of Chester to be changed to "Stark City," in face of the fact that for years prior thereto the plaintiff had extensively advertised its addresses at "Stark," "Starkdale," and "Stark Station," Mo.; that all the offices of the defendants are at Neosho, Mo., about 10 miles from Stark City. while all their advertising prominently bears the address "Stark City," causing much annoyance and confusion to the plaintiff; that defendants in their extensive advertising dwelt upon the fact that the name of "Stark" had for nearly a century been associated with the nursery business of America,

and that for the last quarter of a century the defendant, William P. Stark, has made the name a sort of a trade-mark in big things in nursery work, and that their nursery at Stark City would continue to broaden the "Stark" nursery business; that the business of plaintiff and its reputation and the name of "Stark Trees" had been built up at great labor and expense, employing 5,000 salesmen.

The defendants in their answer deny most of the material allegations, and state that the first notification of the claim of the plaintiff to the trade-mark was in a letter received from it, dated August 26, 1916, many years after they had used the name "Stark" in connection with their business, and deny that they had any knowledge of appellee's claim to the exclusive right to the use of the trade-mark "Stark Trees" until notified by that letter. They deny any intent to defraud, or that appellee has suffered any loss by reason of their acts. They deny that the exclusive right to the trade-mark "Stark Trees," or the word "Stark," on fruit and ornamental trees, has been and is now claimed by plaintiff and its predecessors, or that plaintiff and its predecessors were the first to adopt and use this trade-mark for nursery stock, and, if it did, they had no knowledge of it until they received the letter of August 26, 1916. They deny that, at the time the name of Chester was changed to Stark City, plaintiff was using the address "Stark," "Starkdale," or "Stark Station," Mo.; that for years prior thereto it had not used any of these names, nor had there ever been a post office named "Stark," "Starkdale," or "Stark Station," Mo. They admit that they had advertised the location of their nurseries at Stark City, where they are in fact located, and their offices at Neosho, Mo., and that the defendant William P. Stark had for over a quarter of a century been associated with plaintiff's nursery work. They claim that there can be no confusion, as all their sales are made by catalogues and advertisements, and none by traveling salesmen, while the plaintiff did most, if not all, of its business through traveling salesmen, and emphasized in its advertisements that it was located in Louisiana, Mo., while defendants in all their advertisements and catalogues emphasizzed the location of their nurseries at Stark City; that in all their advertisements, letters, and catalogues they had taken precautions to refrain from disparaging the plaintiff or its products, and that their competition had been fair and open.

Upon final hearing there was a decree in favor of the plaintiff, enjoining defendants from the direct or indirect use of the infringing label, or any colorable imitation of plaintiff's trade-mark, in suit, and from putting the work "Stark" prominently at the top of its label, or elsewhere in connection with the business of producing, advertising, and selling nursery stock, in such manner as will not unmistakably differentiate their goods from those of the complainant, and from using the name or address of "Stark City" upon their labels or tags attached to nursery stock, or packages containing same, or from using the address "Stark City" in advertising their business. The decree also directed a reference to a special master to determine all gains and profits which the defendants have derived by infringing on plaintiff's trade-mark, beginning with the 11th day of March, 1914, and that the plaintiff also recover from the defendants all damages which it has sustained by reason of the defendants' infringement and unfair competition from and after the 26th day of August, 1916, on which date plaintiff gave notice to defendant of the registration of its said trade-mark. 248 Fed. 154. To reverse this decree, appellants are prosecuting this appeal.

Xenophon P. Wilfley, of St. Louis, Mo., and Eugene Pearson, of Louisiana, Mo. (O. L. Cravens, of Neosho, Mo., Ras Pearson, of Louisiana, Mo., and Wilfley, McIntyre, Nardin & Nelson, of St. Louis, Mo., on the brief), for appellants.

Andrew B. Remick, of St. Louis, Mo. (John W. Matson, of Louisiana, Mo., on the brief), for appellee.

Before SANBORN and STONE, Circuit Judges, and TRIEBER, District Judge.

TRIEBER, District Judge (after stating the facts as above). [1] It is undisputed that the appellee and its predecessors have used the name "Stark" in their nursery business for a century and that its products have an established reputation for quality. On June 24, 1913, it was granted a registration of the trade-mark "Stark Trees" under the 10-year clause of section 5 of the Trade-Mark Act of Congress of February 20, 1905 (33 Stat. 725, c. 592), as amended by the Act of February 18, 1911 (36 Stat. 918, c. 113; section 9490, U. S. Comp. Stat. 1916). That trade-mark consisted of the two words "Stark Trees," as shown by this photographic copy:

The appellants' device, charged as the infringement, is on a narrow tag of wood, as shown by this photographic copy:

The word "Stark" is in white letters, across the dark bushy tree; the other words are in black, on white ground. It will be noticed that the word "Stark," across the bushy tree, is in larger letters than any of the other words, which are in smaller type. We concur in the finding of the learned trial judge that "in this manner the word "Stark" is given special emphasis, and from its position the term 'Stark Trees' is vividly suggested."

To justify a finding of infringement of a trade-mark, it is not necessary that the similitude should be exact. It is sufficient if, taking into account resemblance and conditions, the former are so marked that an ordinary purchaser is likely to be deceived thereby. McLean v. Fleming, 96 U. S. 245, 251, 24 L. Ed. 828; Layton Pure Food Co. v. Church & Dwight Co., 182 Fed. 24, 34, 104 C. C. A. 464, 474; McDonald & Morrison Mfg. Co. v. Mueller Mfg. Co., 183 Fed. 972, 974, 106 C. C. A. 312; Heileman Brewing Co. v. Independent Brewing Co., 191 Fed. 489, 494, 112 C. C. A. 133, 138; De Voe Snuff Co. v. Wolff, 206 Fed. 420, 423, 124 C. C. A. 302, 305; O. & W. Thum Co. v. Dickinson, 245 Fed. 609, 614, 158 C. C. A. 37, 42. In Thaddeus Davids Co. v. Davids, 233 U. S. 461, 469, 34 Sup. Ct. 648, 651 (58 L. Ed. 1046, Ann. Cas. 1915B, 322), it was claimed that "the protection is limited to its use when standing alone * * * and that there can be no infringement unless it is used in this precise manner." The court, in denying this contention, said:

"The statutory right cannot be so narrowly limited. Not only exact reproduction, but a 'colorable imitation,' is within the statute; otherwise, the trade-mark would be of little avail, as by shrewd simulation it could be appropriated with impunity."

In McDonald & Morrison Mfg. Co. v. Mueller, supra, this court held:

"The test is not whether, when goods are placed side by side, a difference can be recognized in the labels or marks; but the test is, when such goods are not placed side by side, would an ordinarily prudent purchaser be liable to purchase the one, believing that he was purchasing the other."

See, also, Gordon's Dry Gin Co. v. Eddy & Fisher Co. (D. C.) 246 Fed. 954.

There can be no doubt that an ordinarily prudent person, knowing of the reputation of the "Stark Trees," which for many years have been known as superior trees, would easily be induced to purchase the trees of appellants, in view of the advertisements, the statements in their catalogues, and their trade-mark, in the belief that they came from the orchard nurseries of appellee. The catalogues and advertisements of appellants, which do not appear in the printed record, but were by order of the trial court transmitted to this court as a part of the record, and have been carefully examined, indiscriminately describe their trees and nurseries as "Stark Nurseries," "Stark Brothers," "Stark Trees," and use the word "Stark" in connection with their nurseries and alleged location. The representation that the business is located at "Stark City," although they admit that only their nurseries are at Stark City, while the business itself is conducted at Neosho, the change of the name of the place where their nurseries are located from Chester to Stark City, the attempt to establish offices, at first, at Louisiana, Mo., all tend to impress one that there was an intention to add to the confusion and mislead purchasers of trees into the belief that their trees are those of appellee.

[2] Nor does it matter that appellants were using their own surnames as their trade-mark. While it is true that a person has a right to use his surname as a mark, without being guilty of an infringement, there is a limitation to that right. As stated in the Davids Case, "provided that the name was not used in a manner tending to mislead, and it was clearly made to appear that the goods were his own, and not those of the registrant." The decree complained of only enjoined appellants from using labels with their name "Stark" in such a manner "as will not unmistakably differentiate their goods and advertisements from those of complainant." There is nothing in Stix, Baer & Fuller Dry Goods Co. v. American Piano Co., 211 Fed. 271, 127 C. C. A. 639, which in any wise conflicts with this. Although that was not a registered trade-mark case, it was held:

"If, however, the name has previously become well-known in trade, the second comer uses it subject to three important restrictions: (1) He may not affirmatively do anything to cause the public to believe that his article is made by the first manufacturer. (2) He must exercise reasonable care to prevent the public from so believing. (3) He must exercise reasonable care to prevent the public from believing that he is the successor in business of the first manufacturer."

There is nothing in the decree to prevent appellants from using their surnames, nor from publishing in their catalogues and advertisements the training and knowledge of appellant William P. Stark in the nursery business. But the language employed in this part of the decree is in such general terms that appellants may be at a loss how to comply with the terms of the decree in every respect, and thus

may inadvertently violate the injunction. To avoid this we deem it best, following the rule in the Hall Safe Case, 208 U. S. 560, 28 Sup. Ct. 350, 52 L. Ed. 616, and the Knabe Piano Case, 211 Fed. 271, 127 C. C. A. 639, to indicate in this opinion the decree to be entered on this branch of the case.

Nor is it material that appellants do not use appellee's trade-mark in its entirety, if what they do use is misleading and likely to cause confusion, whether the goods offered under this trade-mark are or are not those of the registrant. In Saxlehner v. Eisner & Mendelson Co., 179 U. S. 19, 33, 21 Sup. Ct. 7, 12 (45 L. Ed. 60), it was held:

"It is not necessary, to constitute an infringement, that every word of a trade-mark should be appropriated. It is sufficient that enough be taken to deceive the public in the purchase of a protected article."

In Ammon & Person v. Narragansett Dairy Co. (D. C.) 252 Fed. 276, 278, the registered trade-mark of plaintiff was "Queen of the West," and that of the defendant "Queen." The court in granting an injunction against the defendant, from using the trade-mark "Queen" said:

"The unnecessary adoption of a part of a plaintiff's trade-mark—a part so substantial as to have become a trade-name or nickname for the goods—is generally regarded as an infringement. The use by a defendant of a trade-mark identical with the name which has been derived from a plaintiff's trade-mark proper, and has become sufficiently descriptive of plaintiff's goods, is the adoption of a mark which will cause its goods to bear the same name in the market. Neither subtractions from nor additions to a trade-mark proper will avoid infringement, when such imitation as is likely to lead to confusion still remains despite the changes"

—and authorities cited. The same principle was announced by this court in Rossman v. Garnier, 211 Fed. 401, 406, 128 C. C. A. 73, 78.

The use of "Stark City" as their address, when their business is conducted at another city, Neosho, Mo., is misleading, and, owing to the name, likely to cause confusion. This is true, not merely owing to the name "Stark" being used, but also for the reason that appellee and its predecessors have frequently advertised their business as at "Stark," "Starkdale," and "Stark Station," Mo., having at some time maintained nurseries at some of these places.

The court committed no error in granting the injunction, but, in order to avoid any misapprehension, there should be added to that part of the decree granting the perpetual injunction the following words:

"That the defendants may use their surnames in circulars, catalogues, or advertisements, but they must be accompanied by information that they are not of the original William Stark Nurseries, nor in any wise connected with the Stark Bros. Nurseries & Orchards Company, or any of its predecessors under whatsoever name their business was conducted, and that their trees are not the product of any of these concerns, nor their successors. It is further ordered and decreed that, for the purpose of distinguishing defendants' trees from those of the complainant, the defendants shall insert in their circulars, catalogues, and advertisements a notice substantially as follows, and in form as conspicuous as the body of such circulars, catalogues, or advertisements:

"Notice.

"The 'Stark Trees' have been the product of the nursery business of the Stark family since the year 1816, and this nursery is still carried on by successors of the original Stark family at Louisiana, Missouri; that William P. Stark, is a member of that family and was connected for over twenty-five years with, and learned the business from, successors of the original Starks · that our business is conducted at Neosho, Missouri, and has no connection whatever with the nursery business of the Stark Bros. Nurseries & Orchards Company, at Louisiana, Missouri."

[3] But we are of the opinion that there was error in decreeing that appellee recover all gains and profits which appellants have derived or received by reason of the infringement of appellee's trademark, beginning March 11, 1914.

Section 28 of the Trade-Mark Act of February 20, 1905, 33 Stat. 730 (section 9514, U. S. Comp. St. 1916), after prescribing that notice of the registration of the mark be given by affixing on the mark or label the words "Reg. U. S. Pat. Off." which was not done by appellee, provides:

"And in any suit for infringement by a party failing so to give notice of registration no damages shall be recovered, except on proof that the defendant was duly notified of infringement, and continued the same after such notice."

As no notice was given by appellee to appellants of infringement of the registered trade-mark, although the words required by the statute were not printed on its trade-mark labels, until a few days before the institution of this action, no damages under this act can be recovered for an infringement of the registered trade-mark before that time in this action. The trial court in its decree limited the damages for infringing the trade-mark to that time, but as to the gains and profits held that the appellants are chargeable for unfair competition from March 11, 1914, when appellee had first complained that appellants' advertising matter constituted unfair competition.

As the jurisdiction of the court below depended solely on the fact that there was a federal question by reason of the registration of the trade-mark under the act of Congress, there being no diversity of citizenship, there can be no liability on the charge of unfair competition prior to the notice under the Trade-Mark Act. To entitle one to recover in such a case, the unfair competition must be a part of the same transaction, to wit, a violation of the act of Congress, and liability thereunder. It must be an aggravation of the infringement of the registered trade-mark, to give the court jurisdiction to award damages. A. Leschen Co. v. Bascom Co., 201 U. S. 166, 26 Sup. Ct. 425, 50 L. Ed. 710; Standard Paint Co. v. Trinidad Asphalt Co., 220 U. S. 446, 460, 31 Sup. Ct. 456, 55 L. Ed. 536; T. B. Wood's Sons Co. v. Valley Iron Works (C. C.) 166 Fed. 770; Ross v. H. S. Geer Co. (C. C.) 188 Fed. 731, 734; Electric Boat Co. v. Lake Torpedo Boat Co. (D. C.) 215 Fed. 377; Planten v. Gedney, 224 Fed. 382, 386, 140 C. C. A. 68, 72; U. S. Bolt Co. v. Kroncke Hardware Co., 234 Fed. 868, 148 C. C. A. 466; Mallinson v. Ryan (D. C.) 242 Fed. 951.

In the case at bar the unfair competition only became a part of the same transaction as the infringement of the registered trade-mark, after the notice had been given, as appellee's trade-mark labels had not the words required by the act of Congress on them: "Reg. U. S. Patent Office." Had no notice been given by appellee, it could not have recovered any damages. This was expressly decided by this court in Rossmann v. Garnier, 211 Fed. 401, 407, 128 C. C. A. 73, 79.

None of the authorities relied on by counsel for appellee is in point. In Jacoway v. Young, 228 Fed. 630, 143 C. C. A. 152, the infringed trade-mark label had printed on it the words "Registered U. S. Patent Office," therefore that was notice. Ludwigs v. Payson Mfg. Co., 206 Fed. 60, 124 C. C. A. 194, and Detroit Show Case Co. v. Kawneer Mfg. Co., 250 Fed. 235, 162 C. C. A. 370, were actions for infringement of patents, and it was held that a claim for unfair competition in connection with the sale of the infringing article, may properly be joined. But see Geneva Furniture Co. v. Karpen, 238 U. S. 254, 259, 35 Sup. Ct. 788, 59 L. Ed. 1295. Shrauger & Johnson v. Phillip Bernard Co. (D. C.) 240 Fed. 131, decided by Judge Wade, not only fails to sustain counsel's contention, but is an authority to the contrary. While Judge Wade makes the statement quoted by counsel for appellee, he proceeds:

"In certain cases, where there was combined the charge of infringement, and also unfair competition, courts have held that, even though the claim of infringement was decided in favor of the defendant, the court still could retain jurisdiction upon the question of unfair competition; but the large majority of the cases are the other way."

After reviewing a large number of authorities, he holds:

"If a bill presented two separate counts, stating two separate and independent causes of action, one for a patent infringement, and the other for unfair competition, entirely independent of the infringement, I should hold that the cause of action for unfair competition should be stricken out. The court has no such jurisdiction conferred by statute, and the rule contended for relates rather to the practice of a court of equity, than it does to the jurisdiction of the court."

When the case was at a later day finally heard before Judge Reed, he sustained a motion to dismiss the petition as to the claim for infringing the plaintiff's alleged trade-mark, and for unfair competition for want of jurisdiction. 247 Fed. 547, 550.

Gains and profits made before notice was given under the Trade-Mark Act, in the absence of a label bearing the inscription prescribed by the act of Congress, are independent of the act of Congress, and can only be recovered under the rules established by courts of equity in actions for unfair competition. Such an action cannot be maintained in a national court in the absence of a diversity of citizenship. As was held in Standard Paint Co. v. Trinidad Asphalt Co., supra:

"The opposite parties to the suit are citizens of different states, and while this diversity of citizenship was not necessary to give the Circuit Court jurisdiction of the case in so far as it involved the validity of the trade-mark, it was necessary to give the court jurisdiction of the issue of unfair competition."

Other questions have been discussed by counsel, and have received our careful consideration, but we do not deem it necessary to pass on them in this cause.

The decree of the court below will be modified, by adding to the injunction clause the words hereinbefore set forth, and that the appellants be charged with the gains and profits made by them by reason of the unfair competition arising from the infringement of appellee's registered trade-mark, and the damages, if any, which appellee has sustained by reason thereof since the beginning of this action.

The costs of this appeal will be taxed, two-thirds to the appellants and one-third to the appellee.